J-A21040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN J. SCHWARTZER | : | No. 3586 EDA 2015 |

Appeal from the Order October 28, 2015
in the Court of Common Pleas of Bucks County,
Criminal Division, No(s):  CP-09-CR-0003071-2015

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED DECEMBER 19, 2016**

The Commonwealth of Pennsylvania appeals from the Order granting John J. Schwartzer's ("Schwartzer") Post-Sentence Motion for Judgment of Acquittal/Arrest of Judgment ("Post-Sentence Motion") and vacating the trial court's finding of guilt of driving under the influence ("DUI") and obscured plates.[1]  We reverse and remand for the trial court to reinstate the guilty verdict and sentence.

On November 23, 2014, at approximately 1:40 a.m., Officer Christopher O'Neill ("Officer O'Neill") of the Warminster Township Police Department was on patrol in Warminster Township.  Officer O'Neill observed a maroon Lexus 350 SUV driving on Street Road in the left lane.  Officer O'Neill could not see a registration/license plate on the vehicle, despite the fact that the weather was clear.  As a result, Officer O'Neill stopped the

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(2); 1332(b)(3).

vehicle.  Once the vehicle had stopped, Officer O'Neill shined his spotlight on the vehicle and observed a dealer tag in the left side of the rear-tinted window.  Officer O'Neill approached the vehicle and told Schwartzer that the stop occurred because he had been unable to see the registration/license plate.  Schwartzer stated that the plate had been placed in the window because a screw for the license plate bracket had broken.  As Schwartzer spoke, Officer O'Neill observed that Schwartzer smelled like alcohol, was slurring his speech and had glassy, bloodshot eyes.  Schwartzer indicated that he had two drinks, but was not drunk.  Thereafter, Officer O'Neill performed field sobriety tests and administered a portable breath test. Officer O'Neill determined that Schwartzer was unable to safely operate the vehicle and placed him under arrest for DUI.  Following his arrest, Schwartzer's blood alcohol content (BAC) was found to be .089%.

Schwartzer was charged with the above-mentioned crimes, as well as DUI under 75 Pa.C.S.A. § 3802(a)(1).  Schwartzer filed an omnibus Pretrial Motion seeking, *inter alia*, to suppress the evidence against him based upon the illegality of the stop.  The trial court denied the Motion.  The case proceeded to a bench trial, after which the trial court found Schwartzer guilty of DUI – B.A.C. 0.08<0.10 and obscured plates – illegible at a reasonable distance and not guilty of DUI-general impairment.  The trial court sentenced Schwartzer to five days to six months in jail, and imposed a fine of $325.00.

On September 4, 2015, Schwartzer filed a Post-Sentence Motion, arguing that the trial court improperly denied his Motion to Suppress; the verdict was against the weight of the evidence; and there was insufficient evidence to support the verdict. The trial court directed Schwartzer to file a brief in support of his Motion by October 16, 2015, and the Commonwealth to respond by October 26, 2015. The trial court also scheduled oral argument on the Motion. Schwartzer filed a brief; however, the Commonwealth failed to file a timely brief. On October 28, 2015, the trial court, finding that the Commonwealth had no objection to Schwartzer's Motion, granted the Motion and vacated the guilty verdict and sentence.[2] The Commonwealth filed a Motion to Vacate Order, which was denied.

---

[2] The trial court's Order stated the following, in relevant part:

> The Commonwealth has presented no [b]rief or argument as of 2:30 p.m.[,] October 28, 2015, nor requested an extension of time to present same, despite having been [o]rdered to do so. By its conduct[,] the Commonwealth has waived its right to present oral argument. The [trial c]ourt has reviewed [Schwartzer's] brief and argument and[,] noting no response from the Commonwealth[,] concludes that the Commonwealth has no objection to [Schwartzer's] request for relief. To the extent that the Commonwealth may wish to assert an argument in opposition to [Schwartzer's] [Post-Sentence] Motion[,] said request is untimely and has been waived.
>
> Accordingly, oral argument is CANCELLED and the relief requested by [Schwartzer] is GRANTED.

Order, 10/28/15, at 1-2 (unnumbered).

The Commonwealth filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, the Commonwealth raises the following questions for our review:

1. Did the trial court err and/or abuse its discretion in granting [Schwartzer's] Post-Sentence Motion [] based on a conclusion that the Commonwealth did not object to the relief requested and/or waived its right to object to relief where the Commonwealth inadvertently failed to file a responsive brief in accordance with the trial court's briefing schedule and filed a timely [M]otion for reconsideration; by awarding a remedy disproportionate to the violation found by the trial court; and/or by failing to undertake a review of the merits of [Schwartzer's] Post-Sentence Motion?

2. Did the trial court err and/or abuse its discretion in granting [Schwartzer's] Post-Sentence Motion [] where suppression of the traffic stop was unwarranted as it was based on probable cause; where the officer developed reasonable suspicion that [Schwartzer] was driving under the influence of alcohol; where [Schwartzer's] arrest was supported by probable cause; and/or the verdict of guilty was based on legally sufficient evidence and was not against the weight of the evidence?

Brief for the Commonwealth at 4 (some capitalization omitted).

In its first claim, the Commonwealth contends that the trial court erred in granting Schwartzer's Post-Sentence Motion based upon the fact that the Commonwealth did not file a responsive brief to the Motion and, therefore, did not object to the relief requested. *Id*. at 22, 33. The Commonwealth argues that under Pennsylvania Rule of Criminal Procedure 720, Schwartzer is required to set forth any claims that he seeks to raise with specificity;

however, there is nothing in the rule that requires the Commonwealth file a responsive brief to avoid waiver. *Id*. at 22-23, 27; *see also id*. at 26 (wherein the Commonwealth claims that it immediately filed a Motion to Vacate when learning of its inadvertent failure to file a responsive brief to the Post-Sentence Motion). The Commonwealth asserts that the trial court's acquittal of Schwartzer based upon its inadvertent failure to file a brief is wholly disproportionate to the violation. *Id*. at 27-28, 29-31.

The Commonwealth also points out that Rule 720 requires a trial court to make a decision within 120 days of the filing of a post-sentence motion and that the trial court granted Schwartzer's Motion 54 days after it was filed and prior to the scheduled oral argument. *Id*. at 28-29. The Commonwealth claims that contrary to the trial court's assertion that it decided the Motion due to time constraints, the trial court had plenty of time to decide the Motion and did not explain how the failure to file a brief impinged upon this timeframe. *Id*. at 29. The Commonwealth also argues that the trial court failed to address Schwartzer's claims on the merits. *Id*. at 25, 31-33.

"The interpretation of the Rules of Criminal Procedure presents a question of law and therefore, ... our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Dowling*, 959 A.2d 910, 913 (Pa. 2008).

Rule 720 states the following, in relevant part:

\*\*\*

**(B) Optional Post-Sentence Motion.**

(1) *Generally*.

(a) The defendant in a court case shall have the right to make a post-sentence motion. All requests for relief from the trial court shall be stated with specificity and particularity, and shall be consolidated in the post-sentence motion, which may include:

(i)     a motion challenging the validity of a plea of guilty or *nolo contendere*, or the denial of a motion to withdraw a plea of guilty or *nolo contendere*;
(ii)    a motion for judgment of acquittal;
(iii)   a motion in arrest of judgment;
(iv)    a motion for a new trial; and/or
(v)     a motion to modify sentence.

\*\*\*

(2) *Trial Court Action*.

(a) Briefing Schedule. Within 10 days after a post-sentence motion is filed, if the judge determines that briefs or memoranda of law are required for a resolution of the motion, the judge shall schedule a date certain for the submission of briefs or memoranda of law by the defendant and the Commonwealth.

\*\*\*

(3) *Time Limits for Decision on Motion*. The judge shall not vacate sentence pending decision on the post-sentence motion, but shall decide the motion as provided in this paragraph.

(a) Except as provided in paragraph (B)(3)(b), the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.

\*\*\*

*Comment*

\*\*\*

*Briefs; Transcripts; Argument*

Under paragraph (B)(2)(a), the judge should determine, on a case-by-case basis, whether briefs or memoranda of law are required for a fair resolution of the post-sentence motion. If they are not needed, or if a concise summary of the relevant law and facts is sufficient, the judge should so order. …

Pa.R.Crim.P. 720; ***see also Commonwealth v. Borrero***, 692 A.2d 158, 160 (Pa. Super. 1997) (stating that "[t]he fundamental purpose underlying the filing of post-sentencing motions is to provide the trial court with the first chance to correct any errors which might warrant an arrest of judgment or the grant of a new trial.").

Rule 720 allows the trial court discretion in determining whether briefs are required to resolve the motion. ***See*** Pa.R.Crim.P. 720(B)(2)(a); Pa.R.Crim.P. 720, cmt. However, Rule 720 does not include any language allowing a trial court to find waiver where the opposing party, the Commonwealth, fails to file a responsive brief. Indeed, under Rule 720, the defendant, not the Commonwealth, has the burden to prove, with "specificity and particularity," whether he/she is entitled to relief. ***See*** Pa.R.Crim.P. 720(B)(1)(a). While the Commonwealth clearly failed to comply with the trial court's Order to file a brief, the trial court cannot use this failure to grant Schwartzer's Motion. Under the plain language of Rule 720, the trial court was required to address the merits of Schwartzer's claims in the

Motion, regardless of whether the Commonwealth has filed a responsive brief, within 120 days of the filing of the Motion.[3]

Furthermore, contrary to the trial court's reasoning that Rule 720's 120-day time limit would have passed had it not found that the Commonwealth waived any objection to the Post-Sentence Motion, *see* Trial Court Opinion, 1/25/16, at 10, 12, the trial court decided the Motion only 54 days after its filing. Thus, the Commonwealth's failure to file a brief did not immediately implicate Rule 720's time limit. Based upon the foregoing, we conclude that the trial court's finding that the Commonwealth waived its right to challenge the issues raised by Schwartzer, for failing to file a responsive brief to the Post-Sentence Motion, was error. **See Commonwealth v. Burke**, 781 A.2d 1136, 1144 (Pa. 2001) (noting that "a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.") (citation omitted); *id*. (stating that "[d]ismissal of criminal charges punishes not only the prosecutor ... but also the public at large, since the public has a

---

[3] We note that Schwartzer cites to Bucks County Rule of Criminal Procedure 1123(g) for the proposition that the failure to file a timely brief following the filing of the Post-Sentence Motion renders the Commonwealth's claims waived. Brief for Appellee at 8. However, Rule 1123(g) applies strictly to the defendant, and does not apply to the Commonwealth. **See** Bucks Co.R.Crim.P. 1123(g) (stating that "[f]ailure to timely file his briefs may be regarded as an abandonment of the motion by defendant."). Moreover, Rule 1123(h) sets forth the time for the Commonwealth to file a responsive brief, but does not include any language regarding waiver of claims for failing to file a brief. **See** Bucks Co.R.Crim.P. 1123(h).

reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law.") (citation omitted); *see generally Commonwealth v. A.G.*, 955 A.2d 1022, 1025 (Pa. Super. 2008) (stating that the dismissal of charges for a prosecutor's violation of discovery rules was too drastic).[4]

However, this does not end our inquiry, as the trial court noted that it reviewed the assertions in Schwartzer's Post-Sentence Motion[5] and determined that they have merit. *See* Trial Court Opinion, 1/25/16, at 4-5, 13. The Commonwealth first argues that the evidence was sufficient to support Schwartzer's DUI conviction. Brief for the Commonwealth at 33, 35-37. The Commonwealth points out that Schwartzer's sufficiency claim in his Post-Sentence Motion is limited to whether the Commonwealth provided evidence related to the margin of error for the device used to determine

---

[4] The trial court asserts that following its entry of the Order granting the Post-Sentence Motion, the Commonwealth engaged in *ex parte* communications with the court. *See* Trial Court Opinion, 1/25/16, at 10-11. The trial court notes that the Commonwealth directly communicated with the court without copying defense counsel on the communication. *Id*. at 10. The Commonwealth argues that it sent a letter, attached to an email, to the trial judge's administrative assistant, and that defense counsel was copied on the email. Brief for the Commonwealth at 25-26. However, based upon our above determination that the trial court could not grant Schwartzer's Post-Sentence Motion based upon the Commonwealth's failure to file a responsive brief, we need not further discuss this matter.

[5] In his Post-Sentence Motion, Schwartzer argued that the trial court erred in failing to grant his suppression motion where Officer O'Neill illegally detained him by stopping his vehicle for an offense that could not be investigated, and conducting a DUI investigation without probable cause; the evidence was insufficient to support the convictions; and the verdict was against the weight of the evidence.

Schwartzer's BAC (Intoxilyzer 8000), and that because his BAC was .089%, the margin of error would have impacted the decision. *Id*. at 36. The Commonwealth contends that it presented evidence of the margin of error for the Intoxilyzer 8000, and that even if Schwartzer's BAC had deviated upwards or downwards, his BAC would be at least .08%, but less than .10%. *Id*. at 37. The Commonwealth claims that the trial court's grant of Schwartzer's Post-Sentence Motion in this regard was in error. *Id*.

> Our standard of review when considering the Commonwealth's claim that the trial court erred in granting appellee's motion for judgment of acquittal is as follows.
>
> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

*Commonwealth v. Foster*, 33 A.3d 632, 634-35 (Pa. Super. 2011) (citation omitted); *see also Commonwealth v. Feathers*, 660 A.2d 90, 94-95 (Pa. Super. 1995) (stating that "[i]n passing upon a post-verdict motion for judgment of acquittal, a trial court is limited to determining the presence or absence of that quantum of evidence necessary to establish the elements of the crime.") (citation and quotation marks omitted). When ruling on a motion in arrest of judgment, "the trial court is limited to rectifying trial errors, and cannot make a redetermination of credibility and weight of the evidence." *Commonwealth v. Marquez*, 980 A.2d 145, 147-48 (Pa. Super. 2009) (*en banc*) (citation omitted). Indeed, "[t]he authority of a trial court over a nonjury verdict is no greater than the authority over a

jury verdict." ***Commonwealth v. Melechio***, 658 A.2d 1385, 1387 (Pa. Super. 1995).

Section 3802(a)(2) states the following:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(2). Further, testing may be conducted to determine the amount of alcohol in a person's blood:

**(c) Test results admissible in evidence.--**In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged.

*Id*. § 1547(c)(1); *see also* 67 Pa. Code § 77.24 (setting forth the regulations regarding breath test procedures, including that the person being tested shall be kept under a police officer's observation for at least 20 consecutive minutes prior to the administration of the first test, "during which time the person may not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten or smoked."); *id*. § 77.25 (setting forth the accuracy inspection tests and procedures to certify the accuracy of the equipment).

On November 23, 2014, Officer O'Neill stopped Schwartzer's vehicle after being unable to see Schwartzer's license plate. N.T., 8/26/15, at 12-14; *see also* N.T., 8/27/15, at 61 (wherein the parties stipulated to the entry of Officer O'Neill's testimony from the August 26, 2015 suppression hearing into the bench trial). After approaching Schwartzer's vehicle and speaking with Schwartzer, Officer O'Neill observed that Schwartzer was slurring his speech, had glassy, bloodshot eyes, and smelled like alcohol. N.T., 8/26/15, at 16, 18. Officer O'Neill administered field sobriety tests on Schwartzer, which Schwartzer failed. *Id*. at 22-30, 37, 39, 40. Officer O'Neill then utilized a portable breath test on Schwartzer. *Id*. at 30. After conducting all of these tests, Officer O'Neill arrested Schwartzer for DUI. *Id*.

After Schwartzer was arrested for DUI, Officer O'Neill took Schwartzer to the Warminster Township Police Department to test his BAC. N.T., 8/27/15, at 63. Officer O'Neill was authorized to operate the Intoxilyzer

8000, a type A breath test device, and a device approved for breath tests. *Id*. at 65; *see also* Commonwealth Exhibit 3. Officer O'Neill followed the protocol required by 67 Pa. Code § 77.24 by observing Schwartzer for 20 minutes prior to administering the test, ensuring that Schwartzer had nothing to eat or drink during that time, and having Schwartzer perform two tests on the machine. N.T., 8/27/15, at 63; *see also id*. at 70. Officer O'Neill also indicated that the Intoxilyzer 8000 used on Schwartzer was working properly and produced a BAC of .089%. N.T., 8/27/15, at 66-67. Further, the parties stipulated to the admission of the various calibrations of the Intoxilyzer 8000. *Id*. at 67-68; *see also* Commonwealth Exhibit 5, 6. Specifically, the Intoxilyzer 8000 had been calibrated on November 21, 2014, two days prior to the incident, and had an average deviation of .0022%. *See* Commonwealth Exhibit 6.

Here, the evidence, viewed in a light most favorable to the Commonwealth, supported Schwartzer's DUI conviction. *See Marquez*, 980 A.2d at 148 (stating that "[a]ll of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove.") (citation omitted); *see also Commonwealth v. Kowalek*, 647 A.2d 948, 952 (Pa. Super. 1994) (stating that "the driver [who] was not in control of himself, such as failing to pass a field sobriety test, could establish the driver was

under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving."). Indeed, the Commonwealth, through the stipulation of both parties, introduced evidence of the accuracy of the Intoxilyzer 8000. The evidence established that even if Schwartzer's BAC had deviated upwards (.0912%) or downwards (.0868%) based upon the calibration deviation, the evidence was sufficient to support Schwartzer's conviction of DUI – B.A.C. 0.08<0.10.

As noted above, when addressing Schwartzer's arrest of judgment claim, the trial court was limited to accepting all of the evidence and reasonable inferences and determining whether the evidence was insufficient to find Schwartzer guilty of DUI. *See Feathers*, 660 A.2d at 94-95; *see also Marquez*, 980 A.2d at 148. Because the trial court employed an incorrect standard of review by making new credibility determinations on the testimony and evidence presented at trial, we conclude that the Commonwealth's claim has merit and reverse the trial court's Order granting Schwartzer's Post-Sentence Motion. *See Feathers*, 660 A.2d at 95-96 (stating that the trial court erred in granting defendant's motion for judgment of acquittal by re-evaluating the credibility of witnesses and concluding that the evidence, viewed in a light most favorable to the Commonwealth, was sufficient to support defendant's DUI conviction).

The Commonwealth also notes that in his Post-Sentence Motion, Schwartzer raised a weight of the evidence claim. Brief for the Commonwealth at 38. The Commonwealth points out that in his Post-Sentence Motion, Schwartzer argued that the verdict was against the weight of the evidence because he was able to drive without committing any moving violations and answer Officer O'Neill's questions. *Id*. The Commonwealth argues that it was not required to demonstrate that Schwartzer was incapable of safe driving. *Id*. at 41. The Commonwealth claims that the verdict was not against the weight of the evidence based upon Schwartzer's BAC, the fact that Schwartzer had an odor of alcohol, slurred his speech, had glassy eyes, and failed numerous field sobriety tests. *Id*. at 40, 41-42.

When ruling on a motion in arrest of judgment, a trial court is limited to rectifying trial errors, and "cannot make a redetermination of … [the] weight of the evidence." *Marquez*, 980 A.2d at 147–48.

At trial, the Commonwealth did not have to demonstrate that Schwartzer was incapable of safe driving. *See* 75 Pa.C.S.A. § 3802(a)(2). Instead, the Commonwealth had to prove that Schwartzer's BAC was between .08% and .10%, within two hours of driving or operating his vehicle. *See id*. The evidence supported the DUI verdict and the trial court cannot reweigh the evidence in granting Schwartzer's Post-Sentence Motion.

Finally, the Commonwealth states that in his Post-Sentence Motion, Schwartzer claimed that the trial court erred in failing to grant his suppression Motion where Officer O'Neill had illegally detained him by stopping his vehicle for an offense that could not be investigated, and conducting a DUI investigation without probable cause. Brief for the Commonwealth at 42. The Commonwealth argues that Officer O'Neill had probable cause to stop the vehicle for violating 75 Pa.C.S.A. § 1332(b)(3), as he could not see the registration/license plate in the required area of the vehicle. *Id*. at 43. The Commonwealth asserts that because the stop was lawful, Officer O'Neill properly made contact with Schwartzer, and could investigate a DUI based upon the observed signs of intoxication. *Id*. at 44-45. The Commonwealth further claims that Officer O'Neill had probable cause to arrest Schwartzer for DUI. *Id*. at 45-46. The Commonwealth contends that the trial court erred in granting Schwartzer's Post-Sentence Motion as to his suppression of evidence claim. *Id*. at 47.

> [With regard to] a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Korn*, 139 A.3d 249, 252–53 (Pa. Super. 2016) (citation omitted).

The Motor Vehicle Code sets forth a law enforcement officer's authority to stop a vehicle for an alleged violation as follows:

> Whenever a police officer … has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

> Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. In effect, the language of Section 6308(b)—to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title—is conceptually equivalent with the underlying purpose of a **Terry**[6] stop.
>
> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, it is encumbent [*sic*] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

**Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (citations, quotation marks, and emphasis omitted, footnote added); **see also Commonwealth v. Chase**, 960 A.2d 108, 116 (Pa. 2008) (stating that to conduct a non-investigative stop for a violation of the Motor Vehicle Code, a police officer must have probable cause to believe an offense has occurred). "The police have probable cause where the facts and

_____

[6] **Terry v. Ohio**, 392 U.S. 1 (1968).

circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." ***Commonwealth v. Hernandez***, 935 A.2d 1275, 1284 (Pa. 2007) (citation and quotation marks omitted). "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." ***Commonwealth v. Salter***, 121 A.3d 987, 994 (Pa. Super. 2015) (citation omitted).

On November 23, 2014, at approximately 1:40 a.m., Officer O'Neill observed Schwartzer driving his vehicle on Street Road, but could not see a registration/license plate on the vehicle, despite the fact that the weather was clear. N.T., 8/26/15, at 12-14. Officer O'Neill was approximately two car lengths behind Schwartzer's vehicle. ***Id***. at 14. As a result, Officer O'Neill activated his emergency lights and stopped the vehicle. ***Id***. Once the vehicle had stopped, Officer O'Neill shined his spotlight on the vehicle and observed a dealer tag in the left side of the tinted rear window. ***Id***. at 15-16, 80, 81-82. Officer O'Neill testified that the placement of a registration plate in the rear window was illegal. ***Id***. at 80.

Based on this evidence, Officer O'Neill had probable cause to believe that Schwartzer's vehicle was in violation of 75 Pa.C.S.A. § 1332(b)(3) (stating that "[i]t is unlawful to display on any vehicle a registration plate

which … is otherwise illegible at a reasonable distance or is obscured in any manner."). Indeed, the trial court found "that the police officer had the right to pull [Schwartzer] over." Trial Court Opinion, 1/25/16, at 13 n.2 (quoting N.T., 8/27/15, at 48) (wherein the trial court finds "as a fact that the police officer had the right to pull [Schwartzer] over."); **see also** N.T., 8/27/15, at 56 (in denying Schwartzer's Motion to Suppress, stating that "it was perfectly reasonable for [Officer O'Neill] to pull the car over."). Further, the fact that Officer O'Neill did not observe any erratic driving or other moving violations by Schwartzer does not negate the finding of probable cause to stop the vehicle. **See Chase**, 960 A.2d at 113 (stating that "[t]he Fourth Amendment does not prevent police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is

a minor offense.").[7]  Thus, under the totality of the circumstances, Officer

O'Neill's testimony was sufficient to establish probable cause to justify the

traffic stop.  *See Salter*, 121 A.3d at 993-94 (concluding that the officer had

probable cause to stop the defendant's vehicle where officer could not see

defendant's registration plate from a distance of 50 feet); *Commonwealth*

*v. Wilbert*, 858 A.2d 1247, 1250 (Pa. Super. 2004) (concluding that

probable cause existed to stop appellant's vehicle where officer, who was

three to four car lengths behind appellant, could not identify the characters

on the vehicle's registration plate, and the fact that the officer could read the

characters after observing the plate up close did not negate the probable

cause to stop the vehicle).

Following the legal stop, Officer O'Neill, who had taken part in over

100 DUI investigations, testified that he observed Schwartzer's glassy,

---

[7] We note that in his brief in support of his Post-Sentence Motion, Schwartzer argues that Officer O'Neill followed Schwartzer "to gather observations to support a DUI investigation."  Brief in Support of Post-Sentence Motion, 10/15/16, at 9 (unnumbered); *see also* Trial Court Opinion, 1/25/16, at 4 (stating that Officer O'Neill "chose to follow the vehicle for an unnecessary length of time on the investigation of the non-compliant license plate, and in so doing gathered information which demonstrated that the car was being operated safely.").  To the extent Schwartzer argues that Officer O'Neill's stop of the vehicle was merely a pretext to investigate a potential DUI, we note that a traffic stop that is merely a pretext for some other investigation does not automatically require the suppression of evidence found after the traffic stop.  *See Whren v. U.S.*, 517 U.S. 806, 812-13 (1996) (establishing a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime); *Chase*, 960 A.2d at 120 (stating that "[i]f police can articulate a reasonable suspicion of a Vehicle Code violation, a constitutional inquiry into the officer's motive for stopping the vehicle is unnecessary.").

bloodshot eyes, smelled the odor of alcohol on his person, and noted that Schwartzer was slurring his speech, which are all signs of intoxication. N.T., 8/26/15, at 11, 16, 18. In addition, Schwartzer admitted that he had consumed two alcoholic beverages. *Id*. at 18. Further, Officer O'Neill administered field sobriety tests, which Schwartzer failed. *Id*. at 22-30, 37, 39, 40. After Officer O'Neill conducted the portable breath test on Schwartzer, Officer O'Neill determined that Schwartzer was incapable of safe driving and placed him under arrest. *Id*. at 30.

In denying the Motion to Suppress, the trial court found the testimony of Officer O'Neill to be credible and determined that Officer O'Neill had probable cause to arrest Schwartzer for DUI based upon his observations and Schwartzer's failure of the field sobriety tests. *See* N.T., 8/27/15, at 56-59. However, the trial court, in granting Schwartzer's Post-Sentence Motion, reweighed Officer O'Neill's testimony and determined that there was no probable cause to arrest Schwartzer for DUI. *See* Trial Court Opinion, 1/25/16 at 4 (noting that the recording of the incident did not convince the court that Schwartzer slurred his speech and that Schwartzer could have been engaged in lawful conduct despite consuming alcohol, smelling like alcohol, and having bloodshot eyes). As noted above, the trial court improperly reweighed Officer O'Neill's testimony in deciding Schwartzer's Post-Sentence Motion. *See Marquez*, 980 A.2d at 147-48. Furthermore, the fact that there could be other explanations for the smell of alcohol or

bloodshot eyes does not render Officer O'Neill's decision to arrest Schwartzer for DUI unreasonable or illegal. **See Salter**, 121 A.3d at 994 (noting that "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference.") (citation omitted). For the foregoing reasons, we conclude Officer O'Neill had probable cause to conduct a traffic stop, and for arresting Schwartzer under suspicion of DUI. **See id**. at 995-98 (concluding that officer had probable cause to arrest appellant for DUI where appellant had glassy eyes, had an odor of alcohol, admitted that she had two glasses of alcohol, and performed poorly on the field sobriety tests); **see also id**. at 996 (stating that "[f]ield sobriety tests are generally accepted methods for ascertaining alcohol or drug impairment at the time of a traffic stop.") (citation and quotation marks omitted).

Based upon the foregoing, we reverse the trial court's Order granting Schwartzer's Post-Sentence Motion. We further direct the trial court to reinstate the initial verdict and sentence.

Order reversed. Case remanded for reinstatement of guilty verdict and sentence. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/19/2016</u>