COMMONWEALTH of Pennsylvania,
Appellee

v.

Edwin MARQUEZ, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 23, 2008.

Filed Aug. 31, 2009.

Lee Mandell, Philadelphia, for appellant (Submitted)

Jonathan M. Levy, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: STEVENS, MUSMANNO, KLEIN, BENDER, BOWES, GANTMAN, SHOGAN, FREEDBERG and CLELAND, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Edwin Marquez ("Marquez")[1] appeals from the judgment of sentence imposed after he was convicted of third-degree murder and criminal conspiracy.[2] We affirm.

1. We note that Marquez is also known as Edwin Jiminez.

¶ 2 The pertinent facts of this case are as follows:

The instant matter arose out of the burglary of [Marquez's] home on May 22, 2005. On that date, [Marquez] and his brother, ... Carlos Jiminez ["Jiminez"], arrived home, after going to a nearby store, and found three men in the home they shared.

At least one of the men was armed. The intruders ran from the home but not before [Jiminez] disarmed one of them.

After the intruders were gone, the police were summoned and, based on the descriptions provided them, they apprehended a suspect. [Jiminez] did not tell the police about the gun he had taken from one of the men.

Two days later, Carlos Alicea, ["the decedent"], his sister, Melanie Cales, his cousin, Rosa Ayala, and her cousin, Grisel Rivera were waiting together for a bu[s] at 5th & Cambria Streets when [Marquez] and another male walked by them. [Marquez] was speaking to someone on a cell phone and was overheard saying "He is here, he is in the store" all the while imploring the person to whom he was speaking to hurry up and get there. [Marquez] then entered the store where he grabbed the decedent, who had just gone inside it, because he believed that the decedent had been one of the men who had entered his home two days earlier. The two men began tussling. This continued for a short while both inside the store and outside it. Eventually, [Marquez] got the decedent in a "full nelson" hold outside the store. When he did, [Jiminez], who had just driven up, ran up to the decedent and shot the decedent in the chest from

2. 18 Pa.C.S.A. §§ 2502, 903.

close range while he still was in the grasp of [Marquez] with the gun he had taken from one of the intruders two days earlier. [Marquez] immediately let go of the decedent[,] who stumbled away. When he did so, [Jiminez] fired a second shot at him. The decedent then fell to the ground at which time [Jiminez] walked over to him and fired a third shot at him.

Following the shooting, both [Marquez] and his brother fled the scene. They both eventually went to Florida where they were arrested on June 7, 2005 and returned to Philadelphia.

The decedent was taken to a nearby hospital where he died shortly after arriving there. An autopsy revealed that the decedent suffered two gunshot wounds to his upper body. The bullets that entered his body damaged his heart, lungs, and liver.

Trial Court Opinion, 4/26/07, at 2–3.

¶ 3 Marquez was charged with murder generally, criminal conspiracy and various weapons offenses. Marquez and Jiminez were tried, as co-defendants, by a jury in October/November 2006. The jury convicted Marquez of third-degree murder and criminal conspiracy. On January 18, 2007, the trial court sentenced Marquez to a prison term of seventeen and one-half to thirty-five years on the murder conviction and a concurrent prison term of ten to twenty years on the conspiracy conviction. Marquez then filed a timely Notice of appeal. The trial court ordered that Marquez file a Concise Statement of matters complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), within fourteen days from the date the notes of testimony became available.[3] Marquez filed a Concise Statement on April 10, 2007.

¶ 4 Marquez raises the following issues on appeal:

1. Is [Marquez] entitled to an arrest of judgment on the charges of murder in the third degree and criminal conspiracy where there is insufficient evidence to sustain the verdict and where the Commonwealth did not prove its case beyond a reasonable doubt?

2. Is [Marquez] entitled to a new trial where he requested a charge on the issue of voluntary manslaughter (unreasonable self-defense) and where the evidence would have justified such a charge, but where the court refused to give that charge?

Brief for Appellant at 3.

¶ 5 Marquez first contends that he is entitled to an arrest of judgment on his convictions of third-degree murder and criminal conspiracy. Marquez argues that there is nothing in the record that would indicate that he agreed with Jiminez to shoot or kill the decedent. Marquez also asserts that he was not acting with the *mens rea* of malice at the time of the shooting. Further, Marquez argues that he was not an accomplice to the decedent's murder.

¶ 6 Our standard of review of this claim is as follows:

When ruling on a motion in arrest of judgment, a trial court is limited to ascertaining "the absence or presence of that quantum of evidence necessary to establish the elements of the crime." At this stage in the proceedings, the trial court is limited to rectifying trial errors, and cannot make a redetermination of

---

**3.** The record before us does not indicate the date upon which the notes of testimony became available.

credibility and weight of the evidence....

For purposes of appellate review,

"In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record.* All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove."

In order for a trial court to properly grant a criminal defendant's motion in arrest of judgment on the ground of insufficient evidence, "it must be determined that accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed [the verdict could properly have been based], it would be nonetheless insufficient in law to find beyond a reasonable doubt that the [defendant] is guilty of the crime charged."

*Commonwealth v. Melechio,* 442 Pa.Super. 231, 658 A.2d 1385, 1387 (1995) (citations omitted) (emphasis in original).

■ ¶ 7 Third-degree murder is defined "all other kinds of murder" other than first degree murder or second degree murder. 18 Pa.C.S. § 2502(c). "The elements of third-degree murder, as developed by case law, are a killing done with legal malice." *Commonwealth v. MacArthur,* 427 Pa.Super. 409, 629 A.2d 166, 167–68 (1993).

Malice exists where there is a particular ill-will, and also where "there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty."

*Melechio,* 658 A.2d at 1388 (citations omitted).

¶ 8 "A person is guilty of [criminal] conspiracy with another person or persons ... if with the intent of promoting or facilitating" the commission of a crime, he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). In addition, a person will be found to be an accomplice "of another person in the commission of an offense if:"

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it....

18 Pa.C.S.A. § 306(c).

■ ¶ 9 Our review of the evidence of record reveals, *inter alia,* that Rosa Ayala ("Ayala") testified that, prior to the shooting, while at the bus stop, she heard a man she identified as Marquez tell someone, while using his cell phone, to "hurry up, come over here, he is here, hurry up." N.T., 10/31/06, at 106. This testimony was corroborated by that of Grisel Rivera ("Rivera"), another eyewitness. N.T., 11/1/06, at 11, 15. Ayala further testified that Marquez then followed the decedent into the grocery store. N.T., 10/31/06, at 106. As the decedent was coming out of the store, Marquez put him in a headlock and held him in that position. *Id.* at 109, 115; *see also* N.T., 11/1/06, at 15. While Marquez was holding the decedent in a headlock outside of the grocery store, Jiminez came down Cambria Street, "took the

gun and shot [the decedent]." N.T., 10/31/06, at 114; *see also* N.T., 11/1/06, at 18. After Jiminez shot the decedent, Marquez "moved back," and the decedent fell. N.T., 10/31/06, at 115.

¶ 10 Commonwealth witness Anthony Fox ("Fox") testified that he observed the fight that occurred between the decedent and a "larger man" prior to the shooting. N.T., 11/1/06, at 43–45. Fox testified that the larger man had the decedent in a headlock, at which time another man came across the street with an automatic hand weapon, approached the decedent, and shot him from very close range. *Id.* at 46. Fox indicated that the larger man "definitely" had the decedent in a headlock until after the first shot was fired. *Id.* at 46–47. After the first shot was fired, the larger man "let go" of the decedent. *Id.* at 47. The shooter then shot the victim a second time, and the decedent fell to the ground on his hands and knees. *Id.* at 48. The shooter then stood over the decedent and shot him a third time from above. *Id.*

¶ 11 At trial, Fox could not specifically identify the shooter or the man who had the decedent in a headlock because "[e]verything happened so fast." *Id.* at 49–50. However, prior to trial, on May 31, 2005, Fox picked a photo of Jiminez from a photo array and identified him as the shooter. *Id.* at 57. Fox also picked a photo of Marquez from another photo array as looking "somewhat like the guy I picked from the first set of pictures...." *Id.* at 59.

¶ 12 Viewing the evidence adduced at trial in the light most favorable to the Commonwealth, as required under our standard of review, we conclude that it was sufficient to establish the elements of the crimes of third-degree murder and criminal conspiracy. From the Common-

wealth's evidence, the jury could infer that Marquez acted with malice by seeking out the decedent, calling someone to let them know that "he is here," and holding the decedent in a headlock until after Jiminez shot him. Thus, the evidence was sufficient to establish Marquez's guilt of third-degree murder.

¶ 13 Further, the evidence was sufficient to establish that Marquez was guilty of criminal conspiracy. The evidence revealed that Marquez was a larger man than the decedent, which casts doubt on Marquez's assertion that he restrained the decedent only to ensure his arrest by the police. Fox indicated that Marquez was heavier and taller than the decedent, and as a result, Marquez easily overpowered the decedent in the scuffle that lasted less than a minute. N.T., 11/01/06, at 44–45. Given Marquez's size advantage, it is doubtful that Marquez reasonably expected difficulty holding the decedent until the police arrived. Nonetheless, Marquez called Jiminez to urge his presence at the scene.

¶ 14 Fox testified further that Jiminez arrived with his gun drawn, charging it in preparation to fire in full view of Marquez, as he crossed the street toward the decedent. *Id.* at 45–46. Marquez continued to restrain the decedent until Jiminez shot him in the chest from a distance of three feet. *Id.* at 46–47. Jiminez subsequently shot the decedent two more times. *Id.*[4]

¶ 15 Marquez showed no surprise and did not release the decedent until he had been shot. If Marquez were truly ignorant of his brother's plans to shoot the decedent, one would not expect him to continue holding the decedent in place as Jiminez approached, wielding a loaded

---

4. Marquez did nothing to prevent Jiminez from shooting the decedent two more times, which would militate against a conspiracy to commit assault, as espoused by the dissent.

weapon. Instead, Marquez restrained the decedent long enough to be shot. He then immediately fled the scene with his brother, failing to remain and provide assistance to the decedent or the police.

¶ 16 This Court has repeatedly held that flight, along with other circumstantial evidence, supports the inference of a criminal conspiracy. *See Commonwealth v. Davalos*, 779 A.2d 1190 (Pa.Super.2001); *Commonwealth v. Hatchin*, 709 A.2d 405 (Pa.Super.1998). Flight is one aspect of the web of evidence that as a whole points to the existence of a criminal conspiracy. *Commonwealth v. Davenport*, 307 Pa.Super. 102, 452 A.2d 1058 (1982).

¶ 17 Marquez's flight to Florida with his brother, Carlos Jiminez, after the murder, suggested an attempt to avoid prosecution. Likewise, his flight from the scene of the crime and from the Commonwealth established he was not an innocent pawn, unaware of his brother's murderous designs. Indeed, when viewed in the totality of the circumstances, Marquez's conduct showed consciousness of his guilt and a desire to escape prosecution for his part in the murder. Flight was the logical conclusion of their criminal confederation.

¶ 18 The web of circumstantial evidence, taken as a whole, points to the existence of a criminal conspiracy carried out by the two brothers. Marquez's assertions that he restrained the decedent only in anticipation of police intervention, oblivious to Jiminez's criminal intentions, were unsupported by the factual record. The evidence provided at trial was sufficient to allow the jury to conclude there was a criminal conspiracy.

¶ 19 Marquez's contrary claims, *i.e.*, that he did not act with malice, that he did not engage in a conspiracy to commit murder, and that he was not an accomplice to the murder, are based on his own testimony and that of Jiminez. Thus, those claims go to the weight of the evidence and the credibility of the witnesses, which were within the province of the jury as fact-finder. *See Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (stating that, "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence;" the Commonwealth may sustain its burden of proof by means of circumstantial evidence); *Melechio*, 658 A.2d at 1387 (holding that, on a motion in arrest of judgment, the trial court "cannot make a redetermination of credibility and weight of the evidence"). Here, the jury chose to believe the testimony of the Commonwealth's witnesses. Thus, we conclude that Marquez's claim that he was entitled to an arrest of judgment lacks merit.

¶ 20 Marquez next contends that he is entitled to a new trial because the trial court erred by refusing to charge the jury on justification/self-defense or on voluntary manslaughter. Marquez argues that the defense requested instructions on both justification/self-defense and on voluntary manslaughter, and that the trial court refused to give the requested charges. Marquez asserts that the co-defendant, Jiminez, who testified at trial, offered evidence upon which the jury could have determined that Jiminez possessed a reasonable or unreasonable belief as to his ability to use self-defense.

¶ 21 In addressing this contention, we first note that, pursuant to the Rules of Criminal Procedure, "[n]o portions of the [jury] charge[,] nor omissions therefrom[,] may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(B). "[T]he mere submission and subsequent denial of proposed points for

charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge...." *Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220, 225 (2005).

█ ¶ 22 In the instant case, Marquez failed to object at the conclusion of the jury charge, and stated that he had no objections or exceptions to the charge. N.T., 11/3/06, at 115. Thus, Marquez's claim is waived under the requirements of Rule 647(B). *See Commonwealth v. Russell*, 938 A.2d 1082, 1093 (Pa.Super.2007) (holding that, in order to preserve for appeal a challenge to a jury charge, the defendant must lodge a specific objection or exception to the jury charge itself).

¶ 23 Judgment of sentence affirmed.

¶ 24 Judge KLEIN files a Concurring and Dissenting Opinion.

¶ 25 Judge CLELAND files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY KLEIN, J.:

¶ 1 I agree with the majority that the trial court properly refused to charge the jury on self-defense. I also agree that the evidence was sufficient to establish criminal conspiracy, although I believe the only conspiracy proven was a conspiracy to commit assault against the victim, not a conspiracy to commit murder. However, I disagree with the majority's conclusion that there was sufficient evidence to support the third-degree murder conviction. Therefore, I respectfully dissent on that issue.

¶ 2 Under Pennsylvania law, if you conspire with another person to conduct a robbery, and, unbeknownst to you, your co-conspirator has a gun, pulls out the gun, and kills someone, the murder would qualify as a natural and probable consequence of the conspiracy for which you could be criminally liable as a co-conspirator. *See Commonwealth v. Johnson*, 719 A.2d 778, 786 (Pa.Super.1998) (*en banc*). However, a defendant may not be found guilty of homicide simply because it appears some kind of confrontation was about to take place and another participant, without knowledge, request, or encouragement of the defendant, radically alters the nature of incident by a using deadly weapon that the defendant did not know the participant had. *See Commonwealth v. Menginie*, 477 Pa. 156, 383 A.2d 870, 873 (1978). Our Court has stated that a defendant may not be liable as a co-conspirator when he or she "had no expectation that a minor scuffle would unexpectedly explode into murder." *Johnson*, 719 A.2d at 786.

¶ 3 In this case, the record established that some type of conspiracy did exist between Marquez and his brother, Carlos Jiminez.[1] However, the evidence showed nothing more than a conspiracy between the two men to apprehend the victim and presumably beat him up in retaliation for a prior burglary. In my view, it is pure conjecture to conclude that Marquez and his brother shared any intent other than to assault the victim. I do not believe it was a natural and probable consequence of that conspiracy that Marquez's coconspirator would come along from a separate location and shoot the victim in front of a crowd of people, shooting Marquez in the process. Under these circumstances, I would conclude that the Commonwealth failed to prove beyond a reasonable doubt that the victim's murder was a natural and proba-

---

1. Though not mentioned in the majority's opinion, a third brother, Orlando Jiminez, was the person who initially called Marquez to tell him that he had seen Alicea at 5th and Cambria Streets. Orlando was not a co-defendant in this case.

ble consequence of the conspiracy to assault him.

¶ 4 To establish a conspiracy, the Commonwealth must show that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa.Super.2005). The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy. *Id.* An agreement may also be inferred from the relation between the parties, their knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the crime. *Id.*

¶ 5 The majority concludes that from the Commonwealth's evidence, the jury could have inferred that Marquez and Jiminez agreed to commit murder or that Marquez agreed to aid Jiminez in committing murder. (Majority Op. at 149.) I disagree. I believe the prior communication between the brothers regarding Alicea's location and physical description, coupled with Marquez's attack of the victim, established nothing more than a conspiracy to commit assault.

¶ 6 It is evident that a conspiracy existed between Marquez and Jiminez. The testimony showed that when he was informed of Alicea's location, Marquez called someone and told that person to "hurry up" and "come over here." (N.T. Trial, 10/31/06, at 106.) Marquez and Jiminez arrived in the area of 5th and Cambria Streets within minutes of each other, further suggesting that a common plan existed between them. (*Id.* at 122.) Although Marquez and Jiminez testified that they merely wanted to hold Alicea for the police, the fact that neither brother called the police, despite having cell phones, contradicts this argument. (*Id.*, 11/2/06, at 40, 48, 84, 98.)

¶ 7 Still, I do not believe this evidence comes close to proving that the brothers had formed a conspiracy to commit murder. Pennsylvania law provides that a person found to be a co-conspirator in a minor crime that develops into a more serious crime is liable for the more serious crime if such crime was a natural and probable consequence of the original conspiracy. *See Johnson, supra* (defendant who conspired to commit violent attacks with baseball bats is liable for conspiracy to commit third-degree murder because death is natural and probable consequence of such attack, regardless of whether defendant participated in killing); *Commonwealth v. La*, 433 Pa.Super. 432, 640 A.2d 1336 (1994) (defendant convicted of conspiracy to commit murder for providing knives used in killing, even though defendant only participated in fight and not in killing itself); *Commonwealth v. Bigelow*, 416 Pa.Super. 449, 611 A.2d 301 (1992) (defendant convicted of third-degree murder and criminal conspiracy when he and three co-conspirators fought victim and one coconspirator used 3½-foot stick to kill victim).

¶ 8 The evidence in this case does not establish that Alicea's murder was a natural and probable consequence of the conspiracy between Marquez and Jiminez. There is no evidence that Marquez had any knowledge that Jiminez had a gun in his possession. (*See* N.T. Trial, 11/2/06, at 96, 117.) When Jiminez obtained the gun after the burglary, Marquez was not even present in the home. (*Id.* at 116.) Jiminez did not reveal to police that he had a gun, choosing to keep the gun hidden in his car instead. (*Id.* at 46, 47.) Without any inclination on Marquez's part that Jiminez had a gun, Alicea's murder cannot

be a natural and probable consequence of the conspiracy to assault him. While it may be inferred that Marquez and Jiminez shared an intent to engage in an assault, it cannot be inferred that the two brothers shared a criminal intent to commit murder.

¶ 9 Furthermore, Jiminez shot and killed Alicea in front of a large number of witnesses, and even shot Marquez in the process. (*Id.* at 108.) Under these facts, and even viewing the evidence in the light most favorable to the Commonwealth, I cannot conclude beyond a reasonable doubt that murder was a natural and probable consequence of the conspiracy to assault Alicea. In *Johnson, supra,* this Court specifically distinguished the fact that the defendant had provided the deadly weapons used to kill the victim from a situation where a defendant "had no expectation that a minor scuffle would unexpectedly explode into murder." 719 A.2d at 786. Here, there is no evidence that Marquez had any expectation that his scuffle with Alicea would result in murder. In fact, eyewitness Anthony Fox's testimony that "[e]verything happened so fast" (N.T. Trial, 11/1/06, at 50), supports Marquez's claim that Jiminez acted suddenly and unexpectedly in pulling out the gun and shooting Alicea.

¶ 10 It is true that in some cases, criminal liability has been extended to a defendant for the acts of his co-conspirators that were committed in furtherance of a common criminal design. *See, e.g., Commonwealth v. Lambert,* 795 A.2d 1010 (Pa.Super.2002) (defendant convicted of second-degree murder, burglary, and criminal conspiracy for driving co-conspirator to victim's house, waiting while co-conspirator broke into house, and remaining in car as co-conspirator shot victim in defendant's presence); *Commonwealth v. Baskerville,* 452 Pa.Super. 82, 681 A.2d 195 (1996) (defendant convicted of second-degree murder and criminal conspiracy when co-conspirator shot and killed victim during armed robbery).

¶ 11 These cases, however, are distinguishable from the situation before us. In each one, the defendant's involvement in the actions leading up to the more serious crime supports the notion that the more serious crime arose as a natural and probable consequence of the original crime. Unlike the defendants in *Lambert* and *Baskerville,* Marquez did not arrive at the scene with his coconspirator. There is no evidence that Marquez even conversed with Jiminez prior to the shooting. (*See* N.T. Trial, 11/2/06, at 110.) Furthermore, I believe Alicea's murder arose out of a conspiracy to commit assault, not a conspiracy to commit robbery or burglary, for which murder would be a natural and probable consequence, as was the case in *Lambert* and *Baskerville.*[2]

¶ 12 Consequently, the evidence of record is insufficient to show that Alicea's murder was a natural and probable consequence of the conspiracy to assault him. While the Commonwealth proved the existence of a conspiracy to commit assault, it failed to prove a conspiracy to commit murder beyond a reasonable doubt. Accordingly, I dissent from the majority on this issue.

2. One case that did uphold a murder conviction arising out of a conspiracy to commit assault is also distinguishable because the defendant in that case continued to participate in the assault after the deadly act had been performed. *See Commonwealth v. Woodward,* 418 Pa.Super. 218, 614 A.2d 239 (1992) (defendant convicted of first-degree murder and conspiracy for continuing to hit victim after co-conspirator had stabbed victim, even though defendant had no knowledge that co-conspirator had a knife). Here, Marquez released Alicea the moment the shots were fired, thus eliminating any evidence of collusive behavior to kill Alicea. (N.T. Trial, 11/2/06, at 90, 109.)

## CONCURRING AND DISSENTING OPINION BY CLELAND, J.:

¶ 1 I agree with my colleagues in the majority that the evidence was sufficient to prove Marquez guilty of the crime of third degree murder, and that he was not entitled to a jury charge on the crime of voluntary manslaughter.

¶ 2 To the majority's conclusion that the evidence was sufficient to prove him guilty of conspiracy to commit murder, however, I respectfully dissent.

¶ 3 In my view the evidence was insufficient to establish Marquez entered into an agreement to commit a specific crime—either murder, as the majority concludes, or assault, as Judge Klein concludes. Since the Commonwealth did not prove what crime Marquez and Jiminez agreed to commit, the Commonwealth did not prove the crime of conspiracy to commit murder.

¶ 4 "To prove conspiracy, 'the trier of fact must find that: (1) the defendant *intended to commit* or aid in the commission of *the* criminal act; (2) the defendant entered into an agreement with another ... *to engage in the crime;* and (3) the defendant or one of more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.'" *Commonwealth v. Montalvo*, 598 Pa. 263, 956 A.2d 926, 932 (2008) (quoting *Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228, 1238 (2004) (emphasis added)).

¶ 5 The Crimes Code provides that a person is "guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) *agrees* with such other person or persons that they or one or more of them will engage in conduct which constitutes *such crime* or an attempt or solicitation to commit such crime; or (2) agrees with such other person or persons in the planning or commission of *such crime* or of an attempt or solicitation to commit such crime." 18 Pa.C.S. § 903. (emphasis added). Conspiracy, in other words, is not made out simply with evidence that the participants agreed to do something illegal; the Commonwealth must prove they have agreed to commit a specific crime.

¶ 6 I believe the evidence, as summarized by the majority, is sufficient to prove the defendant entered into an agreement with someone; and I believe the jury could fairly conclude based on the evidence that Marquez's agreement was with Jiminez. Marquez was overheard on his cell phone saying "He is here, he is in the store" and imploring the person on the other end of the call to come. Shortly thereafter, Jiminez arrived on the scene.

¶ 7 Proving the existence of an agreement, however, does not prove the existence of a conspiracy. "Conspiracy" is not synonymous with "agreement." Not all agreements constitute the crime of conspiracy. To prove the crime of conspiracy the Commonwealth must also prove the purpose of the agreement was to commit a specific crime. Here there was simply insufficient evidence to establish what crime it was Marquez and Jiminez agreed to commit.

¶ 8 The majority correctly notes that both an agreement and the purpose of an agreement may be proved either by direct or circumstantial evidence.

¶ 9 The problem with the Commonwealth's case is the insufficiency of evidence—either direct or circumstantial—of what crime Marquez and Jiminez agreed to commit. In essence, the majority concludes from the fact Jiminez murdered the victim that the murder must have been the purpose of the conspiracy. But proof of harm caused by Jiminez's conduct is not a substitute for proof of Marquez's intent.

The result caused by the conduct of one party to an agreement may be *some* evidence of the purpose of the agreement, but it does not necessarily follow that the conduct of one of the parties was the conduct agreed to by the other, and that is the essence of the crime of conspiracy.

¶ 10 Conspiracy is an amorphous crime, made so by the historical willingness of courts to accede to the argument that because proving the specific crime the conspirators agreed to commit is so difficult then the Commonwealth should be permitted to bootstrap proof of harm into proof of intent. It is admittedly difficult to prove the specific crime which is the object of the agreement. This difficulty of proof, however, is not a reason to relax the Legislature's definition of the crime of conspiracy.

¶ 11 I do not believe the evidence was sufficient to prove that Marquez agreed with Jiminez that he would murder the victim. Consequently, as to the majority's decision upholding the conviction for conspiracy to commit third degree murder, I respectfully dissent.