J-A02001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL TITH | |
| Appellee | No. 3720 EDA 2015 |

Appeal from the Order November 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015686-2013

BEFORE: OTT, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                          **FILED APRIL 27, 2017**

The Commonwealth appeals from the order entered November 9, 2015, in the Court of Common Pleas of Philadelphia, granting the post-sentence motion of Michael Tith for arrest of judgment, after Tith was convicted by the trial court of one count of possession with intent to deliver (PWID) heroin, and sentenced to one and one-half years' probation.[1] The Commonwealth contends the trial court misread the record and erroneously altered the verdict by reevaluating the evidence. Based upon the following, we reverse and remand for the trial court to reinstate the guilty verdict and sentence.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

Tith was arrested on August 23, 2013. On December 24, 2013, the Commonwealth filed an Information, charging Tith with PWID (heroin), conspiracy,[2] possession of a controlled substance,[3] and possession of drug paraphernalia,[4] on August 20, 2013. *See* Information, 12/24/2013.

At trial, the Commonwealth presented evidence of events that occurred on August 20, 2013, as well as August 21, 2013, and August 23, 2013. The trial court summarized the evidence, as follows:

> On August 20, 201[3], [P]olice [O]fficer [Paul] Rich utilized a confidential informant (CI) to attempt a controlled buy of narcotics from [Tith] at or near 436 Tree Street in Philadelphia. Officer Rich prepared his confidential informant and provided him with $20.00 pre-recorded buy money. According to Officer Rich, the confidential informant exited the police officer's vehicle, approached [Tith], [and] they had a brief conversation. After the conversation the confidential informant handed [Tith] the pre-recorded buy money. The confidential informant then went to the north side of the block closer to 5th Street towards the corner. [Tith] went into 436 Tree Street for approximately 1 to 2 minutes. [Tith] exited, walked over to the confidential informant. They had an exchange of small objects. The confidential informant then turned [and] started to walk towards 5th, [Tith] walked back towards 436 Tree Street. See N.T. 9/30/2015 pp. 10-12.
>
> The confidential informant then turned over to Officer Rich two clear packets containing blue inserts with blue markings containing alleged heroin.

---

[2] 18 Pa.C.S. § 903.

[3] 35 P.S. § 780-113(a)(16).

[4] 35 P.S. § 780-113(a)(32).

On August 21, 2013, Officer Rich again performed the same drill with the confidential informant and [Tith] in an identical interaction according to his (the police officer's) testimony. See N.T. 9/30/2015 pp. 14-16.

Afterwards, based upon these events, Officer Rich applied for and obtained a search warrant for the property located at 436 Tree Street, Philadelphia, Pa. The warrant was executed on August 23, 2013.

On cross examination of Officer Rich, he admitted that the alleged transactions between the confidential informant and [Tith] took place 150 to 200 feet from him or more ([u]sing binoculars). Also that he, the police officer lost sight of the men for a brief period during their interaction. Officer Rich admits that he does not know what transpired between the CI and [Tith] and, upon execution of the search warrant, no pre-recorded buy money was ever recovered. Further, no mention of [Tith] was recorded on the initial investigatory reports to identify [Tith] as the person involved in drug transactions. See N.T. 9/30/2015 pp. 26-36.

Officer [Carlos] Buitrago also testified that [on August 23, 2013[5]] he was working plainclothes in a backup capacity, with Officer Rich who had a search warrant for the Tree street location. Officer Buitrago testified that "Mr. Tith dropped an item underneath the parked vehicle that was on the sidewalk, and he began to like work on a bike, making it look like he was working on a bike, with another gentleman that was stopped in my presence by Officer Kidd, I believe that second male last name was Carabello. At which point I secured Mr. Tith, and everybody pretty much exited the vehicle, and we executed the search warrant." See N.T. 9/30/2015 p. 39.

Also testifying is Police Officer Jason Yerges, narcotics officer who testified that he was part of a narcotics investigation ultimately resulting in a search warrant for 436 Tree Street. Although stating that he was part of the investigation team, supposedly in the car with Officer Rich, Officer Yerges was not able to verify many of the allegations testified to by [O]fficer

---

[5] **See** N.T., 9/30/2015, at 38.

Rich. Officer Yerges consistently replied that he could not recall specific facts of the interaction with [Tith] and with his partner, Officer Rich. See N.T. 9/30/2015 pp. 54-57.

Finally Police Officer James Kidd also testified that he was participating in the execution of a search warrant at the Tree [S]treet location. He stated that he arrested the co-defendant, Carabello, who had a key to the Tree Street residence. When questioned about Officer Rich and his interaction with the defendant Tith, Officer Kidd testified as follows:

Q. ...You had no information about my client; correct?

A. I did not.

Q. Officer Rich didn't say anything over the radio about that?

A. I don't know, I don't recall at this time, it's been so long.

Q. Nor were you ever told about my client before you got there; right?

A. It's been so long I don't recall anything being on the radio.

Q. As you sit here today to testify under oath you cannot say that Officer Rich gave you any information or any description about my client?

A. I don't recall anything.

Q. Nor did he say anything immediately prior to you getting there; correct?

A. There was information over the radio, [Y]our Honor, years later, I couldn't tell you what was said over the radio.

See N.T. 9/30/2015 pp. 62-63.

Trial Court Opinion, 6/3/2016, at 2–3.

On September 30, 2015, the trial court convicted Tith of PWID on August 20, 2013,[6] and found him not guilty of the remaining offenses. Tith immediately proceeded to sentencing, and the trial court imposed a sentence of one and one-half years' probation.

On October 6, 2015, Tith filed a post sentence motion for arrest of judgment, contending "the Commonwealth failed to establish beyond a reasonable doubt that [Tith] was the individual who allegedly sold narcotics on the criminal act date specified in the bills of information," *i.e.*, August 20, 2013. Tith's Post Trial Motion for Arrest of Judgment, 10/6/2015, at ¶6.

On November 9, 2015, the trial court granted Tith's motion for arrest of judgment. The trial court opined, in part:

> In the present case, while one police officer alleges he observed [Tith] engage in separate drug sales in which he accepted money following a brief conversation with the confidential informant, other officers testifying cannot verify the same set of facts despite being at the same location and the same times. These inconsistencies, when reviewed in detail, ex post facto, laid the foundation for this Court's decision to grant [Tith's] motion for post-sentence arrest of judgment where the evidence was legally insufficient.
>
> On review of [Tith's] motion for post-trial relief, a doubt arose regarding [Tith's] guilt after examination of the facts drawn from the combined circumstances. Although the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, inconsistencies, at times wreak havoc with credibility.

_____

[6] **_See_** N.T., 9/30/2013, at 87.

Trial Court Opinion, 6/3/2016, at 5–6.  The Commonwealth filed this timely

appeal.[7]

The principles that guide our review are well settled.

Our standard of review of this claim is as follows:

> When ruling on a motion in arrest of judgment, a trial court is limited to ascertaining "the absence or presence of that quantum of evidence necessary to establish the elements of the crime." At this stage in the proceedings, the trial court is limited to rectifying trial errors, and cannot make a redetermination of credibility and weight of the evidence. . . .

For purposes of appellate review,

> "In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record.* All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove."

> In order for a trial court to properly grant a criminal defendant's motion in arrest of judgment on the ground of insufficient evidence, "it must be determined that accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed [the verdict could properly have been based], it would be nonetheless insufficient in law to find beyond a reasonable doubt that the [defendant] is guilty of the crime charged."

***Commonwealth v. Marquez***, 980 A.2d 145, 147–148 (Pa. Super. 2009),

*quoting* ***Commonwealth v. Melechio*** 658 A.2d 1385, 1387 (Pa. Super.

---

[7]  The Commonwealth also filed a Pa.R.A.P. 1925(b) statement contemporaneously with the appeal.

1995) (citations omitted) (emphasis in original). ***See also*** ***Commonwealth***

***v. Feathers***, 660 A.2d 90, 94–95 (Pa. Super. 1995) (citation omitted) ("In

passing upon a post-verdict motion for judgment of acquittal, a trial court is

limited to determining the presence or absence 'of that quantum of evidence

necessary to establish the elements of the crime.'").

Regarding the sufficiency of evidence of identification, the

Pennsylvania Supreme Court has instructed:

> Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight.

***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973) (citation

omitted).

Finally, the Controlled Substances Act defines Tith's offense as follows:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

> ****

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

The Commonwealth maintains the evidence presented at the non-jury trial established that Tith sold heroin to a confidential informant (CI). Specifically, the Commonwealth points to the testimony of Officer Rich, who identified Tith as the seller.

The Commonwealth argues the trial court, in granting Tith's motion for arrest of judgment, erroneously reevaluated the evidence in Tith's favor. The Commonwealth challenges the trial court's finding that "other officers testifying [could not] verify the same set of facts despite being at the same location and the same time."[8] The Commonwealth asserts that Officer Rich was the only officer conducting surveillance on August 20, 2013, that Officer Yerges was present but his sole responsibility was to serve as Officer Rich's lookout, and that Officers Buitrago and Kidd were not present on August 20, 2013. The Commonwealth maintains that "in addition to its error of reevaluating the credibility of the testimony, the court simply misread the record." Commonwealth's Brief at 11.

The Commonwealth contends the trial court also erred as a matter of law when it "'reviewed in detail, ex post facto' the evidence," looking for inconsistencies.[9] *Id.*, *citing* Trial Court Opinion, 6/3/2016, at 5. The Commonwealth asserts, "It was not the function of the court, in reviewing

---

[8] Trial Court Opinion, 6/3/2016, at 5.

[9] *Id.*

- 8 -

post-verdict motions, to reweigh the evidence presented at trial." *Id.* (citation omitted). The Commonwealth states, "the court's opinion readily acknowledges second-guessing the evidence." Commonwealth Brief at 11, *citing* Trial Court Opinion, 6/3/2016, at 6.

At trial, Officer Rich testified that, on August 20, 2013, he arranged a controlled buy in the 400 block of Tree Street in Philadelphia, based upon information supplied to him by a CI. N.T., 9/30/2015, at 9-10. Officer Rich identified Tith as the individual he witnessed sell drugs to the CI. He testified the CI, who was furnished with $20.00 pre-recorded buy money, had a brief conversation with Tith, who was standing outside 436 Tree Street. He stated after the CI handed Tith the buy money, Tith entered 436 Tree Street for one to two minutes, exited, and proceeded to walk over to the CI. Officer Rich testified he observed an exchange of small objects, and the CI returned with two packets containing blue inserts with blue markings of alleged heroin.[10] *See id.* at 10-13.

---

[10] Valerie Davis, of the Philadelphia Police, Department of Chemistry Unit, testified regarding Commonwealth Exhibit 2 (property receipt 3117810, relating to the August 20, 2013, controlled buy), stating the items documented on property receipt tested positive for heroin. *See* N.T., 9/30/2015, at 71–74. *See also id.* at 12-13 (Commonwealth Exhibit 2 – property receipt 3117810). She further testified she only analyzed one of the two packets documented on Exhibit C-2 "because both of those items were consistent with each other." *Id.* at 76. On cross examination, she stated that her report for the property receipt ending in 810 showed one packet was tested and determined to have a weight of 0.019 grams. *See* N.T., 9/30/2015, at 77–78 (property receipt 3117810).

Officer Rich also identified Tith as the seller of drugs in a controlled buy that occurred in the same fashion on August 21, 2013, at the same place. *See id.* at 13-15. He further testified that on August 23, 2013, he saw Tith exit 436 Tree Street, at which point he directed officers to stop Tith and his co-defendant, and police then executed a search warrant at that address. *See id.* at 18–19.

On cross examination, Officer Rich testified the August 20, 2013, transaction occurred between 4:00 and 7:00 p.m. He explained he was seated in an unmarked car on the passenger side, about 100 feet away from Tith, and was using binoculars. *See id.* at 20–21. He saw Tith's right profile, saw him go into the house, observed Tith and the CI exchange small objects, and then saw Tith as Tith walked toward him. *See id.* at 23–26. Officer Rich testified the second transaction happened almost the same way. *See id.* at 27. Officer Rich admitted no pre-recorded buy money was ever recovered, and that no descriptive information of Tith was included in the property receipts or police report ("48") generated by the investigation. *See id.* at 28–33. He further testified he saw Tith again on August 23, 2013, during surveillance at the scene. *See id.* at 33.

In his direct testimony, Officer Yerges testified only regarding the narcotics he recovered during the execution of the warrant at 436 Tree

Street, on August 23, 2013.[11]  *See id.* at 49-52.  Officers Buitrago and Kidd

testified solely regarding their respective roles in the events that occurred on

_____

[11] On cross-examination, Officer Yerges testified in the following exchange:

Q. Did you see my client at all, the person sitting next to me?

A. Yes.

Q. What time did you see him?

A. At some time prior to the execution of the warrant I observed him coming out of 436 Tree Street.

Q. Was that immediately prior or like an hour prior?

A. I don't remember.

Q. How close was it to the time you served the warrant?

A. It was – all that happened within an hour of serving the warrant, [Y]our Honor, I don't remember what time it was.

Q. Was my client fixing a bike out there?

A. I don't recall him fixing a bike, no.

Q. Had you ever seen my client before that day?

A. Yes.

Q. When was that?

A. There were two prior days where controlled buys were conducted on the 400 block of Tree Street and I seen you client out there on those days.

Q. You didn't see him do anything though; right?

*(Footnote Continued Next Page)*

─────────

A. I seen him engage in hand-to-hand transaction with a confidential informant on the block.

Q. You did?

A. Yes.

Q. Were you using binoculars?

A. I wasn't, no.

Q. Was your brother officer?

A. I don't remember.

Q. Did you see your brother on those two days August 20th, 21st, do you remember Officer Rich being there?

A. Yes, I was partner's with him on those days.

Q. Where were you physically in the car?

A. I don't remember.

Q. Did you see Officer Rich use binoculars during these alleged observations?

A. Your Honor, I don't remember.

Q. Did you see Officer Rich move at all within the car?

A. I'm sure he did.

Q. Where did he move?

A. I don't know. Like I said, I don't remember.

Q. But you do remember the 23rd?

A. Yes, the execution of the warrant day, yes.

(Footnote Continued Next Page)

August 23, 2013. Officer Buitrago testified he secured Tith prior to the execution of the search warrant. *See id.* at 38–39. Officer Kidd testified he saw Tith standing next to the co-defendant, but his attention was directed to the co-defendant. *See id.* at 62.

On this record, the evidence, viewed in a light most favorable to the Commonwealth, supports Tith's PWID conviction. *See Marquez, supra*, 980 A.2d at 148. The Commonwealth presented positive identification of Tith as the seller in the August 20, 2013, controlled buy through the testimony of Officer Rich. *See Hickman, supra*. Officer Rich detailed his opportunity to observe Tith on August 20, 2013, and his identification of Tith remained unshaken on cross-examination.

As discussed above, when addressing Tith's arrest of judgment claim, the trial court was limited to accepting all of the evidence and reasonable inferences therefrom in determining whether the evidence was insufficient to find Tith guilty of PWID. *See Marquez, supra*. Here, however, the trial

*(Footnote Continued)* ⸻

Q. Why is it you remember the 23rd but not the 21st or 20th?

A. Because my primary duty, Your Honor, was the safety of other officers during any of the surveillance which I wasn't focused primarily on the target location or the defendant here. On that day when we executed the warrant I specifically remember only searching the kitchen area, that was my responsibility, so, that's what I focused on, that's what I came prepared to testify about today.

N.T., 9/30/2015, at 54

court made new credibility determinations. Even if Officers Yerges, Buitrago and Kidd were not credible, the Information only charged Tith with PWID and related offenses that occurred on August 20, 2013, and the testimony of Officer Rich, which was accepted by the trial judge, was clearly sufficient evidence to support the court's verdict finding Tith guilty of PWID. Therefore, it was improper for the trial judge to reweigh the credibility of Officer Rich after rendering her verdict on the August 20, 2013 PWID charge. As such, the grant of the motion in arrest of judgment was erroneous. *See Feathers, supra*, 660 A.2d at 95-96 (finding trial court engaged in impermissible reevaluation of the credibility of the witnesses and the weight of the evidence; reversing post-verdict entry of a judgment of acquittal). Accordingly, based on the foregoing, we reverse and remand to the trial court for reinstatement of the guilty verdict and sentence.

Order reversed. Case remanded for reinstatement of guilty verdict. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/2017

- 14 -