J-S39022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
RYAN RIVERA :
:
Appellant : No. 487 MDA 2022

Appeal from the Judgment of Sentence Entered January 19, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0005661-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED MARCH 09, 2023**

Ryan Rivera ("Appellant") appeals from the January 19, 2022 judgment of sentence of an aggregate 40 to 80 years' incarceration, imposed after he was found guilty of one count each of third-degree murder, conspiracy to commit third-degree murder, and carrying a firearm without a license.[1] Appellant challenges the legality of his sentence, arguing that conspiracy to commit third-degree murder should not be a cognizable offense in Pennsylvania. After careful review, we affirm.

Appellant's convictions stem from an incident on May 30, 2019, which led the Lancaster Bureau of City Police to find Tyreek Gardner ("the victim") unresponsive on the sidewalk in front of 522 East Chestnut Street, suffering from multiple gunshot wounds to his torso. The victim died later that same

_____

[1] 18 Pa.C.S. §§ 2502(c), 903, and 6106(a)(1), respectively.

night at Lancaster General Hospital.  Trial Court Opinion ("TCO"), 8/12/22, at 1.  A forensic pathologist subsequently performed an autopsy on the victim and determined that the cause of death was multiple gunshot wounds and that the manner of death was homicide.  *Id.*

The trial court summarized the evidence which led to Appellant's convictions in its Pa.R.A.P. 1925(a) opinion, as follows:

> Detective Ryan Hockley interviewed the victim's girlfriend, Samantha Krizmencic, who was with the victim on the night of the homicide.  Krizmencic told Detective Hockley that shortly before the shooting, she and the victim were walking westbound on Fulton Street when they were confronted by a male known to her, later identified as [Appellant], and another man she did not know, later identified as Brian Paltan.  Krizmencic stated that [Appellant] wanted to fight the victim and tried to persuade the victim to come closer.  During this time, Krizmencic reported that [Appellant] kept one hand in his pocket.
>
> Detectives later canvassed the area and located numerous surveillance cameras at different locations in the surrounding area.  By reviewing the video footage from these cameras, detectives were able to ascertain the chronology of events leading to the homicide.  The footage showed that [Appellant] arrived in the 300 block of East Fulton Street in a dark-colored Volkswagen Passat.  [Appellant] exited the Passat, and another unidentified male entered the driver's seat of the Passat.
>
> [Appellant] can later be seen following the victim and Krizmencic into the 300 block of East Fulton Street.  The victim and Krizmencic later split up while in the 200 block of North Shippen Street.  Shortly thereafter, the victim can be seen returning to the 300 block of East Fulton Street, at which point he is again confronted by [Appellant] and Paltan.  Paltan can be seen attempting to punch the victim near the intersection of East Fulton Street and Tobacco Avenue, at which point the victim runs north onto Tobacco Avenue.  [Appellant] and Paltan then chase the victim down Tobacco Avenue, at which point all three men are out of camera view.

Video footage subsequently showed that [Appellant] and Paltan run southbound on Tobacco Avenue back onto the 300 block of East Fulton Street, while the victim turned westbound and exited Tobacco Avenue on North Shippen Street, where he ran southbound onto the 200 block of North Shippen Street. During the time in which [Appellant] and Paltan chased the victim onto Tobacco Avenue, a resident of the 300 block of East Fulton Street reported hearing three gunshots and seeing two unknown males feeling [*sic*] eastbound on the 300 block of East Fulton Street.

A later canvass of the area revealed three spent 9mm shell casings and several bullet strikes in that block of Tobacco Avenue. Two of the 9mm shell casings had head-stamps identifying them as Federal-brand ammunition, while the other 9mm shell casing had a head-stamp identifying it as GECO-brand ammunition. Neither [Appellant n]or Paltan can be seen brandishing or openly carrying any firearms in the video footage obtained by the detectives.

Further review of the collected footage showed that as the victim ran southbound on the 200 block of North Shippen Street, he ran past the same dark-colored Volkswagen Passat that brought [Appellant] to the scene. The victim then ran onto East Chestnut Street and head[ed] eastbound. During this time, [Appellant] and Paltan are seen on surveillance footage at the intersection of North Plum Street and East Fulton Street. A short time after the victim ran past the dark-color[ed] Volkswagen Passat, [Appellant] can be seen receiving some form of communication on his cell phone.

[Appellant] then looked southbound toward the intersection of North Plum and East Chestnut Street, and point[ed] towards the victim, who was observed running eastbound on Chestnut Street. Immediately thereafter, the same dark-colored Volkswagen Passat being operated by an unknown male pulls up to the corner of East Fulton Street and North Plum Street. [Appellant] then entered the front passenger seat and Paltan enter[ed] the rear driver-side seat.

The dark-colored Volkswagen Passat drives onto East Chestnut Street and heads eastbound in pursuit of the victim. The video footage showed that shots were fire[d] when the dark-colored Volkswagen Passat catches up to the victim in the 500 block of East Chestnut Street. No other moving vehicles or pedestrians were seen in the area. Four spent 9mm shell casings were located in the parking lane of the 500 block of East Chestnut Street, primarily in front of 526 and 528 East Chestnut Street, which is

- 3 -

consistent with the [bullets] having been fired from a vehicle moving eastbound. All four of the spent shell casings had head-stamps identifying them as Federal-brand ammunition.

The spent shell casings from the 500 block of East Chestnut Street and Tobacco Avenue were sent to the Pennsylvania State Police Bureau of Forensic Services for firearm and toolmark analysis. The two spent Federal-brand shell casings from Tobacco Avenue and the four spent Federal-brand shell casings from the 500 block of East Chestnut Street were all determined to have been discharged from the same firearm, while the GECO-brand shell casing was determined to be discharged from a different firearm.

Using the video footage and automobile registration records, Detective Ginder identified the dark-colored Volkswagen Passat as being registered to Brian Paltan. Paltan is a known associate of [Appellant] and was the only male who is not [Appellant's] family … listed on [Appellant's] visitation list when [Appellant] was incarcerated between 2016 and 2019. On June 11, 2019, police executed a search warrant on Paltan's Volkswagen Passat. In the trunk, police located a 9mm handgun magazine fully loaded with GECO-brand 9mm ammunition, identical to the spent shell casing located on Tobacco Avenue.

When Paltan's vehicle was seized on June 11, 2019, Paltan agreed to a voluntary interview with Detective Ginder. Paltan indicated to Detective Ginder that he is the only person who ever drives that car. He also admitted to operating that vehicle in the area of the homicide on the night of May 30, 2019. He specifically recounted parking the Volkswagen Passat in the 200 block of North Shippen Street, where he placed a phone call to a friend whose name he refused to provide to police, and then subsequently driving eastbound on East Chestnut Street after leaving North Shippen Street. Paltan denied that anyone else was in the car with him that night and denied any knowledge of the homicide.

On July 29, 201[9], Detective … Hockley interviewed a woman identified as India Gonzalez. Gonzalez is personally familiar with … Paltan, as well as [Appellant]. During the interview, Gonzalez was shown several photographs of still images taken from video surveillance obtained at the time of the homicide. Based on physical appearance, mannerisms, and clothing descriptions observed in the still photographs, Gonzalez identified the two men who confronted the victim as … Paltan and [Appellant].

*Id.* at 1-5 (unnecessary capitalization omitted).

On November 15, 2021, after a jury trial, Appellant was found guilty of one count each of third-degree murder (Count I), conspiracy to commit third-degree murder (Count II), and carrying a firearm without a license (Count IV). *Id.* at 5. On January 19, 2022, he was sentenced to the following: 20 to 40 years' incarceration on Count I; 20 to 40 years' incarceration on Count II, to run consecutively to Count I; and 3½ to 7 years' incarceration on Count IV, to run concurrent with Count II. Appellant's sentence amounted to an aggregate of 40 to 80 years' incarceration. *Id.*

Appellant filed a motion to reconsider his sentence on January 20, 2022, followed by a supplemental post-sentence motion on March 10, 2022, both of which were denied by the trial court on March 21, 2022. On March 22, 2022, Appellant filed a timely, notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on August 12, 2022. Herein, Appellant presents the following sole issue for our review: "Did the sentencing court impose an illegal sentence for conspiracy to commit third[-]degree murder when said crime should not be a cognizable offense under Pennsylvania [law]?" Appellant's Brief at 4.[2]

_____

[2] In his Rule 1925(b) concise statement, Appellant also challenged the sufficiency of the evidence to support his conviction of conspiracy to commit third-degree murder; however, he does not raise this issue on appeal. Accordingly, we deem any sufficiency claim regarding Appellant's convictions
*(Footnote Continued Next Page)*

Appellant's claim implicates the legality of his sentence. It is well-settled that "[i]ssues relating to the legality of a sentence are questions of law. Our standard of review over such questions is *de novo* and our scope of review is plenary." **Commonwealth v. Wolfe**, 106 A.3d 800, 802 (Pa. Super. 2014) (internal brackets, ellipses, and citation omitted). After reviewing the record, we discern that Appellant raises this issue for the first time on appeal. Generally, an issue that was not properly preserved before the trial court would be deemed waived. **See Commonwealth v. Thorne**, 276 A.3d 1192, 1196 (Pa. 2022). However, "an appellate court can address an appellant's challenge to the legality of his sentence even if that issue was not preserved in the trial court; indeed, an appellate court may even raise and address such an issue *sua sponte*." **Id.** (internal brackets and citation omitted). Thus, we proceed with reviewing the merits of Appellant's claim.

Instantly, Appellant posits that,

> in order to convict [him] of conspiracy to commit third[-]degree murder, the Commonwealth was required to prove that [he], with [the] intent of promoting or facilitating third[-]degree murder, agreed with [Paltan] that one or both of them would engage in conduct which constitutes third[-]degree murder, or engage in an attempt or solicitation to commit third[-]degree murder.

---

to be waived. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **Wirth v. Commonwealth**, 95 A.3d 822, 858 (Pa. 2014) ("[Rule 2116(a)] is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.").

Appellant's Brief at 9. Restated, Appellant argues that "the Commonwealth was required to prove that [he] and [Paltan] intended to commit an unintentional killing." *Id.* He reasons that "an individual cannot conspire to commit murder of the … third degree because a conspiracy to commit said crime[] would require proof that the individual intended to perpetrate an unintentional killing." *Id.* at 10. Appellant acknowledges that our Supreme Court rejected this very argument in *Commonwealth v. Fisher*, 80 A.3d 1186 (Pa. 2013). However, in light of pre-*Fisher* caselaw recognizing the "logical impossibility" of intending to commit an unintentional act, he asks this Court to reconsider the *Fisher* decision and to determine that "conspiracy to commit third[-]degree murder is not a cognizable offense under Pennsylvania law." *Id.* at 9-10.

The Crimes Code defines conspiracy as follows:

**(a)** **Definition of conspiracy**.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

…

**(e)** **Overt act**.—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903(a), (e). Thus,

> to sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent[,] and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

*Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa. Super. 2006) (citations and quotation marks omitted).

Third-degree murder is defined by the Crimes Code as "all other kinds of murder" other than first-degree murder or second-degree murder. 18 Pa.C.S. § 2502(c). Importantly, we note that Section 2502(c) does not set forth the requisite *mens rea* for third-degree murder; however, Section 302(c) of the Crimes Code provides: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly[,] or recklessly with respect thereto." 18 Pa.C.S. § 302(c). "The elements of third-degree murder, as developed by case law, are a killing done with legal malice." *Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009) (citation omitted). "Malice exists where there is a particular ill-will, and also where 'there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences[,] and a mind regardless of social duty.'" *Id.* (citation omitted).

In *Fisher*, the appellees argued that because conspiracy is a specific intent crime and third-degree murder involves an unintentional killing, then a

- 8 -

person cannot conspire to commit third-degree murder because one cannot intend to commit an unintentional act. *Fisher*, 80 A.3d at 1190. This is the same syllogistic argument made by Appellant in the present case. The *Fisher* Court expressly rejected the appellees' argument, explaining that the appellees had misstated the elements of third-degree murder. *Id.* at 1191.

> True, the intent to kill is a defined element of first[-]degree murder—this does not mean an element of third[-]degree murder is the polar opposite of intent to kill, such that the Commonwealth must prove a lack of intent to kill to convict of third[-]degree murder. The Commonwealth has no such obligation; evidence of intent to kill is simply irrelevant to third[-]degree murder. The elements of third[-]degree murder absolutely include an intentional *act*, but not an act defined by the statute as intentional murder. The act sufficient for third[-]degree [murder] is still a purposeful one, committed with malice, which results in death— clearly, one can conspire to such an intentional act.

*Id.* (emphasis in original).

After reviewing the relevant statutory provisions and caselaw, our Supreme Court concluded that "the absence of intent to kill does not preclude a defendant from being convicted of conspiracy to commit third[-]degree murder." *Id.* at 1195. It emphasized that "[t]hird[-]degree murder is not by definition an unintentional killing; it is a malicious killing without proof that the specific result intended from the actions of the killer was the death of the victim." *Id.* (citation omitted). The Court clarified:

> If a defendant acts with his co-conspirators in brutally attacking the victim with the intention of killing him, he conspires to commit first[-]degree murder; if the defendant performs the same action but does not care whether the victim dies or not, he conspires to commit third[-]degree murder. In the latter example, the defendant did not … intend to aid an unintentional murder; rather,

he intended to aid a malicious act resulting in a killing. Malice is not the absence of *any* intent, just the specific intent to kill. Where … the defendant intends the underlying act … which results in death, the evidence supports the charge of conspiracy to commit third[-]degree murder.

*Id.* (emphasis in original). Accordingly, the *Fisher* Court held that "conspiracy to commit third[-]degree murder is a cognizable offense." *Id.*

This Court has no authority to overrule *Fisher*. As an intermediate appellate court, we "generally lack[] the authority to determine that [the Supreme] Court's decisions are no longer controlling." *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011) (citing *Commonwealth v. Jones*, 554 A.2d 50, 51 (Pa. 1989)). Instead, we "are duty bound to effectuate [the Supreme] Court's decisional law." *Id.* Therefore, we have no power to grant relief.

Here, the evidence supports a finding that Appellant and Paltan agreed to engage in the intentional, malicious hunting and gunning down of the victim, without regard to the consequences of their acts. As their actions resulted in the victim's death, Appellant's conviction of conspiracy to commit third-degree murder was appropriate. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/09/2023</u>