J-S23009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN MARQUEZ | : | |
| | : | |
| Appellant | : | No. 3568 EDA 2019 |

Appeal from the PCRA Order Entered December 3, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0904661-2005

BEFORE:  NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    Filed: October 1, 2020

Appellant Edwin Marquez[1] appeals from the order dismissing his timely
first petition under the Post Conviction Relief Act (PCRA).[2]  On appeal,
Appellant claims that trial counsel was ineffective for failing to challenge the
weight of the evidence issue after his trial and in his direct appeal.  We affirm.

The PCRA court set forth the relevant facts of this appeal as follows:

On May 22, 2005, Appellant and his brother, Carlos Jiminez
[(Codefendant)], arrived home after going to a nearby store and
found three men inside their shared residence.  A struggle ensued
during which one of the three intruders had a handgun taken from
him by [Codefendant], who did not tell police about having taken
the firearm.  The intruders then fled.

Two days later, Carlos Alicea [(the victim)] was at bus stop located
at 5th and Cambria Streets waiting for a bus with some family

---

[1] It appears that Appellant's full name is Edwin Marquez Jimenez.  **See** N.T.
Trial, 11/2/06, at 64.

[2] 42 Pa.C.S. §§ 9541-9456.

members when Appellant walked by in the company of another male. Appellant was talking on a cell phone and was overheard saying, "He is here, he is in the store[,]" all the while imploring the person to whom he was speaking to hurry up and get there. Apparently, Appellant believed that [the victim] was one of the men who had entered his home two days prior thereto.

When the phone call ended, Appellant followed [the victim] into a store and grabbed and punched him after which he and [the victim] began struggling. Eventually, both men made their way outside where Appellant gained control of [the victim]. Immediately thereafter, [Codefendant], who had just driven to the area, quickly ran up to [the victim] and Appellant. When he reached them, [Codefendant] shot [the victim] in the chest from close range with the gun confiscated from one of the intruders two days earlier. When he was shot, [the victim] was firmly in Appellant's grasp and completely under his control.

After [Codefendant] shot [the victim], Appellant let [the victim] go at which time [Codefendant] fired a second shot at [the victim], who fell to the ground. [Codefendant] then walked over to [the victim] and fired a third shot at him.[3] Both Appellant and [Codefendant] fled the scene and eventually went to Florida where they were arrested in June of 200[5].

[The victim] was taken to a nearby hospital where he was pronounced dead shortly after arrival. An autopsy of his body revealed that he died as a result of two gunshot wounds to his torso that caused damage to his heart, lungs, and liver.

PCRA Ct. Op., 12/10/19, at 2-3.

On November 6, 2006, a jury found Appellant guilty of third-degree murder and criminal conspiracy. On January 18, 2007, the trial court sentenced Appellant to seventeen-and-a-half to thirty-five years' imprisonment for murder and a concurrent term of ten to twenty years' imprisonment for conspiracy. Trial counsel did not file a post-sentence motion

---

[3] At some point during the incident, Codefendant also apparently shot Appellant through the wrist or hand. N.T. Trial, 11/2/06, at 91-92.

on Appellant's behalf or otherwise preserve a challenge to the weight of the evidence, but filed a direct appeal to this Court challenging, in relevant part, the sufficiency of the evidence.[4]

On August 31, 2009, an *en banc* panel of this Court rejected Appellant's sufficiency claims and affirmed the judgment of sentence.[5] ***Commonwealth v. Marquez***, 980 A.2d 145 (Pa. Super. 2009) (*en banc*).  On December 29, 2009, our Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Marquez***, 987 A.2d 160 (Pa. 2009).

On August 17, 2011, Appellant filed his first PCRA petition *pro se*.  **See** *Pro Se* Pet. for PCRA Relief, 8/17/11.  The PCRA court appointed David S. Rudenstein, Esq., as counsel for Appellant.  On October 23, 2017, Attorney

---

[4] Lee Mandell, Esq. (trial counsel) represented Appellant at trial and in the direct appeal.

[5] Specifically, in reviewing Appellant's sufficiency claim, this Court concluded: "From the Commonwealth's evidence, the jury could infer that [Appellant] acted with malice by seeking out the [victim], calling someone to let them know that 'he is here,' and holding the [victim] in a headlock until after [Codefendant] shot him." **Marquez**, 980 A.2d at 149.  This Court further stated that "[t]he web of circumstantial evidence, taken as a whole, points to the existence of a criminal conspiracy carried out by the two brothers." **Id.** at 150.  Judge Klein and Judge Cleland filed separate concurring and dissenting opinions.  **See id.** at 151 (Klein, J. concurring and dissenting) (stating that while "the record established that some type of conspiracy did exist[,] . . . it [was] pure conjecture to conclude that [Appellant] and [Codefendant] shared any intent other than to assault the victim"); **id.** at 154-55 (Cleland, J. concurring and dissenting).

- 3 -

Rudenstein filed a motion to withdraw and a **Turner**/**Finley**[6] letter asserting that Appellant's petition was untimely filed and presented no issues of arguable merit. On February 6, 2018, the PCRA court granted Attorney Rudenstein's motion to withdraw, but dismissed Appellant's PCRA petition on the merits.[7]

Appellant appealed the dismissal of his PCRA petition to this Court. Upon review, this Court concluded that the PCRA court "should not have permitted counsel to withdraw . . . ." **Commonwealth v. Marquez**, 790 EDA 2018, 2019 WL 1896548, *2 (Pa. Super. filed Apr. 29, 2019) (unpublished mem.). Accordingly, this Court vacated the denial of Appellant's PCRA petition, remanded the matter to the PCRA court, and directed that new counsel be appointed for Appellant. **Id.**

---

[6] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[7] Appellant, in his initial *pro se* PCRA petition, acknowledged that he did not file his petition within the one-year PCRA deadline. *Pro Se* Pet. for PCRA Relief at 3-5. However, Appellant attached to his *pro se* petition his correspondence with the trial court regarding his appeal. Additionally, Appellant attached a letter from trial counsel stating that counsel forgot to inform Appellant of our Supreme Court's denial of his petition for allowance of appeal.

In its opinion, the PCRA court noted that "[a]lthough Appellant did not timely file his PCRA petition, the record clearly shows that direct appeal counsel failed to inform of him of the denial of his petition for allowance of appeal. Upon being informed of his denial, he filed his *pro se* PCRA petition within sixty days of learning of the denial thereby making the filing timely because he acted with due diligence." PCRA Ct. Op., 3/28/18, at 2 n.2 (citation omitted).

On remand, the PCRA court appointed new PCRA counsel, and counsel filed the instant amended petition on May 21, 2019. *See* Am. Pet. for PCRA Relief, 5/21/19. This petition claimed that trial counsel was ineffective for failing to challenge the weight of the evidence. *Id.* Specifically, Appellant asserted that the trial evidence failed to establish an agreement between Appellant and Codefendant to shoot the victim. *Id.* at 9.

The PCRA court found that Appellant's amended petition lacked merit and on October 16, 2019, issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition without a hearing. *See* Notice Pursuant to Pa. Rule of Crim. P. 907, 10/16/19. Appellant did not respond.

On December 3, 2019, the PCRA court dismissed Appellant's amended petition without a hearing. That same day, Appellant filed a notice of appeal. The PCRA court did not order the filing of a Pa.R.A.P. 1925(b) statement, but issued a Rule 1925(a) opinion on December 10, 2019. *See* PCRA Ct. Op., 12/10/19.

On appeal, Appellant raises one issue for our review:

> Did the PCRA court err in dismissing Appellant's PCRA [p]etition without a hearing when trial / direct appeal counsel was ineffective for failing to preserve a weight of the evidence issue as to all convictions and Appellant suffered prejudice because there was nothing tying Appellant to a conspiracy with [Codefendant] to shoot [the victim]?

Appellant's Brief at 4.

Appellant asserts that trial counsel's failure to preserve a weight of the evidence argument deprived the trial court of its gatekeeping role when

- 5 -

considering whether he was entitled to a new trial. *Id.* at 16. Appellant argues that "[i]t is beyond rational belief that Appellant would somehow mentally agree with his Codefendant brother that Codefendant would shoot [the victim] and Appellant. Appellant stood back and did not continue to restrain [the victim] while Codefendant shot." *Id.* at 15. Further, Appellant notes that trial counsel challenged the sufficiency of the evidence in Appellant's direct appeal and that at least two judges of this Court believed the evidence was insufficient.[8] *Id.* at 5, 9, 15-16. According to Appellant, had the weight claim been preserved, Appellant would have been "awarded a new trial by the trial court or on appeal." *Id.* at 16.

More specifically, Appellant contends that "[t]here was nothing on the initial overheard telephone conversation wherein Appellant told [Codefendant] to bring a gun." *Id.* at 15. Moreover, Appellant argues that "[w]itnesses testified [at trial] that when [Codefendant] arrived, Appellant stood back and did not continue to restrain [the victim]." *Id.* at 14. Appellant emphasizes that he "was also shot by [Codefendant] during the underlying incident." *Id.* at 15.

_____

[8] Appellant references the concurring and dissenting opinions filed in this Court's prior *en banc* decision affirming the judgment of sentence. *See* Appellant's Brief at 5, 9. We note, however, that dissenting opinions are not binding precedent. *See Commonwealth v. Davis*, 17 A.3d 390, 398 (Pa. Super. 2011) (stating the general rule that a decision lacks precedential value if it does not garner the support of a majority of the sitting judges); *see also Conrad v. Dept. of Transportation, Bureau of Driver Licensing*, 226 A.3d 1045, 1056 (Pa. Cmwlth. 2020) (stating that "a dissenting opinion is not binding precedent").

Appellant further observes that "[Codefendant] was convicted of a specific intent crime, first-degree [m]urder, while Appellant was not." *Id.* Appellant argues that "[a] jury may render inconsistent [v]erdicts but the trial court should be able to address weight of the evidence issue i[f] a post-sentence [m]otion is filed and this was not done by [trial] counsel." *Id.*

Appellant insists that he "suffered prejudice because the [r]ecord and conviction are no[t] free from legal error in that Appellant's conviction is based upon speculation only" and constitutes a "miscarriage of justice."[9] *Id.* at 16-17. Appellant concludes that "[t]here was a near presumption of guilt and no one, including Appellant, could foresee the crazed shooting initiated by [Codefendant]." *Id.* at 20. Ultimately, Appellant requests a remand for an evidentiary hearing to determine trial counsel's ineffectiveness for failing to preserve and raise a weight of the evidence claim. *Id.* at 8. In the alternative, Appellant asserts that he is entitled to a new trial or an order vacating his judgment of sentence. *Id.*

The Commonwealth responds that the "evidence plainly demonstrated that [Appellant] and [Codefendant] hunted the victim down in an act of revenge, and that [Appellant] both called [Codefendant] to the scene and held the victim in place for [Codefendant] to walk up to the victim and shoot him from close range." Commonwealth's Brief at 10. The Commonwealth argues

---

[9] According to Appellant, "[i]f the shooting did not occur in a deprived part of Philadelphia, no one would presume that an individual would show up given the underlying facts and start shooting." Appellant's Brief at 16 (citations omitted).

that Appellant's underlying weight of the evidence claim was meritless because "[t]he jury was free to credit the Commonwealth's evidence, which was based on several eyewitnesses, that [Appellant] was a direct and active participant in the murder." *Id.* The Commonwealth asserts "[t]here simply was no substantial countervailing evidence to his knowing and direct participation in the murder" and concludes "[t]he jury's verdict was well supported by the evidence." *Id.* at 18-19. Further, the Commonwealth notes that there was no prejudice "as the PCRA court, which also had been the trial court, found[] it would have denied the proffered motion." *Id.* at 11.

The Commonwealth also asserts that there was no conflict between Codefendant's conviction for first-degree murder and Appellant's conviction for conspiracy and third-degree murder. *Id.* at 18. The Commonwealth argues that Appellant "erroneously conflates the intent necessary to prove conspiracy with the intent necessary to prove murder in the first degree." *Id.* at 17. Specifically, the Commonwealth states that "[c]onspiracy to commit murder in the third degree is a cognizable crime. It does not require a specific intent to kill." *Id.* at 17-18 (citing *Commonwealth v. Fisher*, 80 A.3d 1186, 1195 (Pa. 2013) (stating that "one does not conspire to commit a denominated offense, one conspires to engage in certain conduct"). The Commonwealth relies on *Fisher* for the proposition that "the act sufficient for third degree is still a purposeful one, committed with malice, which results in death." *Id.* at 18 (quoting *Fisher*, 80 A.3d at 1191). Further, the

Commonwealth argues that "[e]ven if the jury verdicts were inconsistent" there would be no "grounds to grant a new trial." *Id.* at 19.

This Court's standard of review for the dismissal of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of the record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). This Court reviews "the PCRA court's legal conclusions *de novo*." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted).

We start with the presumption that a PCRA petitioner's trial counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffective assistance of counsel, a PCRA petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citations omitted).

The PCRA petitioner carries the burden to prove all three of the following elements: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the

outcome of the proceedings could have been different." ***Id.*** (citations omitted). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007) (citations omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit. Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa. Super. 2017) (citations omitted and formatting altered), *appeal denied*, 179 A.3d 6 (Pa. 2018). "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." ***Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011).

It is well settled "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008) (citation omitted).

> To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Hanible***, 30 A.3d 426, 452 (Pa. 2011) (citation omitted

and formatting altered).

This Court has stated that the following principles govern weight of the

evidence claims:

> A claim alleging the verdict was against the weight of the evidence
> is addressed to the discretion of the trial court. Accordingly, an
> appellate court reviews the exercise of the trial court's discretion;
> it does not answer for itself whether the verdict was against the
> weight of the evidence. It is well settled that the [fact-finder] is
> free to believe all, part, or none of the evidence and to determine
> the credibility of the witnesses, and a new trial based on a weight
> of the evidence claim is only warranted where the [fact-finder's]
> verdict is so contrary to the evidence that it shocks one's sense of
> justice. In determining whether this standard has been met,
> appellate review is limited to whether the trial judge's discretion
> was properly exercised, and relief will only be granted where the
> facts and inferences of record disclose a palpable abuse of
> discretion.

***Commonwealth v. Landis***, 89 A.3d 694, 699 (Pa. Super. 2014) (citation

omitted). Further, this Court has held that

> [a] new trial should not be granted because of a mere conflict in
> the testimony or because the judge on the same facts would have
> arrived at a different conclusion. Rather, the role of the trial court
> is to determine that notwithstanding all the evidence, certain facts
> are so clearly of greater weight that to ignore them, or to give
> them equal weight with all the facts, is to deny justice. A motion
> for a new trial on the grounds that the verdict is contrary to the
> weight of the evidence concedes that there is sufficient evidence
> to sustain the verdict; thus the trial court is under no obligation
> to view the evidence in the light most favorable to the verdict
> winner.

***Id.*** (citation omitted).

A challenge to the weight of the evidence must be preserved in the trial court. Pa.R.Crim.P. 607(A). However, the failure to file a post-sentence motion alone does not give rise to a presumption of prejudice. ***See Commonwealth v. Reaves***, 923 A.2d 1119, 1131-32 (Pa. 2007). A petitioner must establish a reasonable probability that filing a post-sentence motion would have led to a different outcome. ***See id.*** at 1131.

Instantly, the PCRA court, which also presided over Appellant's trial, concluded that "[r]elief was properly denied with respect to this claim because the evidence did not shock the conscience." PCRA Ct. Op. at 6. The PCRA court explained its decision as follows:

> First, two witnesses testified that when his [Codefendant] arrived, Appellant had the victim in a headlock and that when the fatal shots were fired, Appellant still had hold of the victim. [Codefendant] confirmed that when he shot the victim, Appellant had the victim in his grasp. In fact, Appellant suffered a gunshot wound to his arm during the incident thereby contradicting Appellant's claim that he had stepped away from the victim when his brother approached and killed the victim.
>
> In addition, because Appellant . . . called [Codefendant] imploring him to get to that location as fast as he could, the jury could reasonably find that Appellant and [Codefendant] shared the goal of making the victim pay for the break-in. Although there was no evidence that Appellant told his brother to bring a gun, the jury could reasonably infer that Appellant knew that it was likely that [Codefendant] would bring a gun with him. Even if that was not the case, Appellant saw [Codefendant] arrive and approach the victim while visibly possessing a gun. As noted above, Appellant continued to restrain the victim as [Codefendant] approached with the gun visible in his hand. By not letting the victim go, Appellant manifested that he too had the intent to harm the victim. . . . [T]he jury clearly understood that both crimes required different mental states by convicting Appellant only of third degree murder

because the record failed to establish that Appellant shared the specific intent to kill the victim with [Codefendant].

*Id.* at 7-8.

Following our review, we agree with the PCRA court's conclusion that Appellant's weight of the evidence claim would not have warranted a new trial. We note that criminal conspiracy requires the Commonwealth to prove that "the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act done in furtherance of the conspiracy." ***Commonwealth v. Brinker***, 882 A.2d 1008, 1017 (Pa. Super. 2005) (citation omitted). The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Id.* (citation omitted).

Moreover, "[w]here the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy." ***Fisher***, 80 A.3d at 1192 (citation omitted). As our Supreme Court noted in ***Fisher***, it is a conspiracy "to commit a bearing, which being carried out with the mental state of malice, [that] supports a charge of third degree murder." *Id.* at 1195.

Instantly, Appellant's weight of the evidence claim relies on (1) the fact that he did not expressly tell Codefendant to bring a gun, (2) conflicting testimony about when Appellant released the victim around the time of the shooting, and (3) the fact that Codefendant also shot Appellant through the wrist. However, in addition to the evidence suggesting that Appellant called Codefendant before attacking the victim, one of the eyewitnesses, Anthony Fox, testified that while Appellant was restraining the victim in a "headlock" or "full nelson," Codefendant arrived at the scene with a semiautomatic pistol. *See* N.T. Trial, 11/1/06, at 44-47. Specifically, Fox testified that Codefendant was openly carrying a pistol, loaded the pistol by pulling back the slide, approached to within arm's length of the victim, and then fired the first shot into the victim's chest while standing in front of the victim. *See id.* According to Fox, Appellant, who Fox described as taller and heavier than the victim, was behind the victim and only released the victim after Codefendant fired the first shot. *Id.* at 45-46.

Based on our review of the record, we agree with the PCRA court that the jury was entitled to resolve the inconsistencies in the evidence highlighted by Appellant. *See Landis*, 89 A.3d at 699. We also agree with the PCRA court that the jury's findings did not shock one's sense of justice. *See id.* As noted by the PCRA court, there was reasoned basis for the jury to conclude that (1) Appellant and Codefendant initially entered into an agreement to attack the victim, (2) Appellant acted with malice when he continued to restrain the victim as Codefendant approached with the gun and shot the

- 14 -

victim at close range, and (3) the victim's death was a natural and probable consequence of Appellant's and Codefendant's actions taken in pursuance of their criminal agreement. **See Fisher**, 80 A.3d at 1192, 1195; **Brinker**, 882 A.2d at 1017. It was not the role of the trial court, or this Court in a direct appeal, to grant a new trial merely because it would have arrived at a different conclusion. **See Landis**, 89 A.3d at 699.

To the extent Appellant relies on Codefendant's conviction for first-degree murder as support for his weight claim, we find this argument to be meritless. Specifically, the jury heard evidence that Codefendant possessed the gun and shot the victim at least one time while Appellant was restraining the victim. Codefendant ultimately fired multiple shots, and Fox testified that Codefendant fired the final shot after the victim fell to the ground. **See** N.T. Trial, 11/1/06, at 48. Based on this record, we find no inconsistency between Codefendant's conviction for first-degree murder and Appellant's conviction for third-degree murder as would support Appellant's request for a new trial.

In sum, we find that the record supports the PCRA court's conclusion that Appellant's proposed weight of the evidence claim would not have resulted in a new trial.[10] **See Reaves**, 923 A.2d at 1131-32; **Ousley**, 21 A.3d

---

[10] We acknowledge that the PCRA court's opinion refers to Appellant making a phone call *after* accosting the victim inside the store. **See** PCRA Ct. Op., 12/10/19, at 7. The record, however, established that Appellant made the phone call *before* entering the store. **See** N.T. Trial, 10/31/06, at 106-07, 147; N.T. Trial, 11/1/06, at 15. Further, we do not agree with the PCRA court's suggestion that Appellant's intent to harm the victim alone would have

at 1242. Therefore, Appellant failed to establish prejudice resulting from his claim that trial counsel was ineffective for preserving a weight of the evidence claim. *See Reaves*, 923 A.2d at 1131-32; *Turetsky*, 925 A.2d at 880. Lastly, Appellant has not shown a genuine issue of fact warranting an evidentiary hearing. *See Jones*, 942 A.2d at 906. Accordingly, for the foregoing reasons, we find no abuse of discretion or error of law in the PCRA court's decision to dismiss Appellant's amended PCRA petition without a hearing, we affirm. *See Ousley*, 21 A.3d at 1242; *Jones*, 942 A.2d at 906.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/20

---

established his liability for third-degree murder. *See Fisher*, 80 A.3d at 1195. However, for the reasons stated herein, the PCRA court's statements regarding the timing of Appellant's phone call or his intent do not affect the overall soundness of its conclusion that Appellant would not have been entitled to a new trial based on his weight claim.