J-S38044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDY KUILAN | : | |
| | : | |
| Appellant | : | No. 914 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006572-2021

BEFORE: LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED OCTOBER 30, 2023**

Andy Kuilan (Kuilan) appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County (trial court) after his bench trial convictions for third-degree murder, persons not to possess firearms, firearms not to be carried without a license, carrying firearms in Philadelphia, possession of an instrument of crime and recklessly endangering another person.[1] On appeal, he challenges the sufficiency and the weight of the evidence. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 6105(a)(1), 6106(a)(1), 6108, 907(a) and 2705.

**I.**

The trial court summarized the evidence presented at Kuilan's trial as follows:

> On December 23, 2020, at approximately 8:20 a.m., Kuilan shot and killed the decedent, Masai Moore, on the 3100 block of "F" Street in Philadelphia. The entire incident was captured on surveillance video from multiple cameras located around the area of the shooting as well as near Kuilan's residence at 5721 Tackawanna Street, where he lived with his paramour, Natasha Quinones. Various surveillance videos captured Kuilan leaving his residence, parking a block-and-a-half away from the scene, walking over to the decedent, pulling out a gun, and shooting at him eight times before returning to his vehicle and driving back to his residence. N.T. 12/5/2022 at 195-204, 215; Comm. Ex. 38.
>
> At 7:45 a.m. that morning, Kuilan can be seen on surveillance video walking from the alleyway behind the 5700 block of Tackawanna Street and entering a black 2010 Buick LaCrosse parked on Cheltenham Avenue. After driving away, Kuilan is later seen on video at 8:13 a.m. parking the Buick LaCrosse on "E" Street near the corner of E. Allegheny Avenue about a block-and-a-half from where the shooting occurred. Kuilan exited the vehicle dressed in a black hooded sweatshirt, black sweatpants, and black shoes with a black ski mask over his face. He walked south on "E" Street and turned left onto Allegheny Avenue. N.T. 12/5/2022 at 224-231.
>
> At approximately 8:20 a.m., Kuilan is seen on video turning onto "F" Street from Allegheny Avenue. Kuilan walked directly toward the decedent, who was standing on the corner of "F" and Wishart Streets, pulled a gun from his sweatshirt pocket, pointed it at the decedent, and fired eight shots. In doing so, Kuilan ignored three other people in that same area and deliberately targeted the decedent. After Kuilan fired the first few shots in quick succession, the decedent attempted to duck behind a car for cover then ran across "F" Street. Kuilan chased the decedent as he continued firing several more shots while the decedent ran toward Allegheny Avenue. After being shot twice, the decedent collapsed on Allegheny Avenue and subsequently died from the gunshot wound to his chest. N.T. 12/5/2022 at 20-22, 33-35, 195-201, 232; Comm. Ex. 2, 38.

With the gun still in his hand, Kuilan ran down Wishart Street toward "E" Street. When Kuilan was next captured on video turning onto "E" Street, he was no longer running, but walking toward the area where he parked his vehicle. As he approached his vehicle after crossing Allegheny Avenue, Kuilan took off his ski mask and placed the gun, a Glock 19 9-millimeter semi-automatic with an extended magazine, in the wheel well of another vehicle parked on "E" Street. After he initially walked away, Kuilan stopped, turned around, and retrieved the firearm from the other vehicle's wheel well before returning to the Buick Lacrosse and driving away. N.T. 12/5/2022 at 198-201, 233-236; Comm. Ex. 38.

At 9:40 a.m., Kuilan returned to Cheltenham Avenue, where he parked his vehicle in the same parking spot that he had left earlier. He then exited the vehicle and walked down the alleyway toward his residence at 5721 Tackawanna Street. N.T. 12/5/2022 at 204, 237-39.

As a result of an investigation of Kuilan by the Pennsylvania State Police that was ongoing at the time of the shooting, a GPS tracker had been placed on Kuilan's vehicle on December 22, 2020. The GPS tracker showed the Buick LaCrosse drive to and from the area of the shooting on December 23, 2020 and matched the movement of the vehicle captured on surveillance video. A day after the shooting occurred, the Buick LaCrosse was parked behind 5721 Tackawanna Street and remained there until Kuilan was arrested by the Pennsylvania State Police on February 12, 2021. N.T. 12/5/2022 at 122, 167-70; Comm. Ex. 34.

At the time of Kuilan's arrest, a search warrant was executed on the Buick Lacrosse and a 9-millimeter Glock 19 semi-automatic handgun with an extended magazine was recovered from under the driver's seat. That same day, Kuilan provided a statement to police in which he admitted that the Buick LaCrosse was his vehicle, even though it was registered to another individual, and that the Glock 19 belonged to him. N.T. 12/5/2022 at 111-116; Comm. Ex. 29.

Corporal Shadi Johnson of the Pennsylvania State Police, who saw Kuilan regularly in the six months prior to the incident while conducting an investigation of him, identified Kuilan as the

shooter upon viewing the surveillance video. N.T. 12/5/2022 at 107-109.

Eight 9-millimeter fired cartridge casings ("FCCs") were recovered at the scene. All eight were located on the west side of "F" Street, where the Defendant was seen shooting on video. Each of the FCCs were fired from the Glock 19 found in Kuilan's Buick LaCrosse. Kuilan's DNA was found on the steering wheel and interior driver side door handle of the Buick Lacrosse. N.T. 12/5/2022 at 54-56, 84-89, 244-46; Comm. Ex. 24 & 26.

Trial Court Opinion (TCO), 5/9/23, at 2-4 (cleaned up).

At the end of the trial, the trial court found Kuilan guilty of the above offenses and later sentenced him to an aggregate term of 26 to 52 years' imprisonment.[2] After the trial court denied his post-sentence motion, Kuilan filed this appeal to assert that his third-degree murder conviction was against the sufficiency and weight of the evidence.

## II.

## A.

Kuilan first claims that the Commonwealth presented insufficient evidence to convict him of third-degree murder.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission

_____

[2] The trial court imposed the maximum 20 to 40 years for third-degree murder, a consecutive 5 to 10 years for persons not to possess firearms, and a consecutive 1 to 2 years for recklessly endangering another person. The court imposed no further penalty on the remaining convictions.

thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336–37 (Pa. Super. 2019).

Third-degree murder is defined by the Crimes Code as "all other kinds of murder" other than first-degree murder or second-degree murder. 18 Pa.C.S. § 2502(c). While Section 2502(c) does not set forth the requisite *mens rea* for third-degree murder, Section 302(c) of the Crimes Code provides: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly[,] or recklessly with respect thereto." 18 Pa.C.S. § 302(c). "The elements of third-degree murder, as developed by case law, are a killing done with legal malice." *Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009) (citation omitted). "Malice exists where there is a particular ill-will, and also where 'there is a wickedness of disposition,

hardness of heart, wanton conduct, cruelty, recklessness of consequences[,] and a mind regardless of social duty.'" *Id.* (citation omitted).

Kuilan first argues that surveillance footage shown at trial was not strong enough to prove beyond a reasonable doubt that he was the shooter. In support of this contention, Kuilan asserts that the shooter's face and body were covered for most of the incident, as the only time the shooter's face is seen in the footage is when he removes his mask to place the gun inside the wheel well of a car. According to Kuilan, this "grainy" footage was not conclusive enough to establish his identity as the shooter.

Kuilan's first argument fails for two reasons. First, as Kuilan concedes in his argument, the surveillance footage showed that the shooter removed his mask after the shooting when he was hiding the gun. Upon viewing this footage, Corporal Johnson of the Pennsylvania State Police (PSP) was able to identify Kuilan as the shooter in the video because Corporal Johnson had been investigating and saw Kuilan regularly in the six months before the shooting. *See* N.T., 12/5/2022, at 107-109. We have previously found it proper for a witness to offer a lay opinion as to the identity of an individual in security footage when the witness's identification is rationally based upon his or her own perception. *See Commonwealth v. Palmer*, 192 A.3d 85, 101 (Pa. Super. 2018) (holding that the admission of a detective's lay opinion testimony identifying the appellant as the shooter in surveillance videos was proper because it was based upon his perceptions and was helpful in allowing

the factfinder to reach a clear understanding). Thus, the trial court was free to credit Corporal Johnson's testimony and conclude that Kuilan was the shooter depicted in the surveillance footage. *See Commonwealth v. Connelly*, 2023 WL 5274028, unpublished memorandum, at *7-10 (Pa. Super. filed August 16, 2023) (rejecting defendant's claim that there was insufficient evidence to identify him as the shooter where two police detectives identifying him as the shooter in surveillance footage, as the factfinder was free to credit their testimony without corroborating evidence of identity).[3]

The second reason why Kuilan's identification argument fails is that the surveillance footage was not the Commonwealth's only evidence in identifying him as the shooter. Indeed, besides presenting testimony identifying Kuilan as the shooter in the video, the Commonwealth presented evidence connecting Kuilan to the Buick LaCrosse that the shooter drove to and from the shooting. As the trial court noted, the PSP were investigating Kuilan before the shooting and placed a GPS tracker on what they believed to be his car: the Buick LaCrosse. On the day of the shooting, the tracker showed that the Buick LaCrosse traveled to and from the area of the shooting, thus matching the movement of the car shown in the surveillance footage. The Buick LaCrosse then remained parked behind where Kuilan lived until his arrest in

---

[3] Pursuant to the Pennsylvania Rules of Appellate Procedure, we may cite non-precedential memorandum decisions of this Court that were filed after May 1, 2019, for their "persuasive value." Pa.R.A.P. 126(b)(1)-(2).

February 2021. After his arrest, Kuilan admitted that the Buick LaCrosse was his car even though he was not the registered owner, and that the Glock 19 that was found belonged to him and not his paramour. DNA testing was later performed and confirmed not only that Kuilan's DNA was found on the steering wheel and interior driver side door handle of the Buick Lacrosse, but also that the Glock 19 found inside the car fired the FCCs recovered at the shooting. Thus, contrary to Kuilan's suggestion that the Commonwealth relied solely on the surveillance footage, the Commonwealth presented substantial evidence establishing that Kuilan drove the Buick LaCrosse to the shooting and used the Glock 19 to kill the victim.

Kuilan next argues that the Commonwealth presented insufficient evidence for the trial court to conclude that it was him and not someone else who was driving the car and, therefore, had access to the gun. Besides being better suited to the weight of the evidence, this speculative claim ignores that Kuilan gave a statement after his arrest admitting that the Buick LaCrosse was his car and that the Glock 19 found inside the car belonged to him. **See** N.T. 12/5/2022 at 111-116; Comm. Ex. 29. The trial court was free to credit his statement and, after watching the surveillance footage showing the shooter acted alone, conclude that Kuilan drove the Buick LaCrosse and shot the victim.

Finally, assuming he was the shooter, Kuilan argues that the Commonwealth presented insufficient evidence that he acted with malice

because the Commonwealth could not establish the distance from which the shots were fired. We find this argument unavailing. Rather than show that Kuilan fired randomly at a group of people from far away, the evidence showed that Kuilan "walked directly toward the decedent, who was standing on the corner of "F" and Wishart Streets, pulled a gun from his sweatshirt pocket, pointed it at the decedent, and fired eight shots." TCO at 2. Upon seeing the decedent try to hide and run away, Kuilan chased after the decedent and continued firing at him until he collapsed and died on the street after being shot in the chest. *Id*. at 3. Under such circumstances, there was more than enough evidence for the trial court to infer that Kuilan acted with the requisite malice in killing the decedent and, therefore, convict him of third-degree murder. *See Commonwealth v. Jones*, 271 A.3d 452, 460 (Pa. Super. 2021) (sufficient evidence of malice where the defendant intentionally fired a gun, in rapid fire succession, directly at the victim and did not stop shooting as the victim fell to the floor); *Commonwealth v. Patterson*, 180 A.3d 1217, 1223 (Pa. Super. 2018) (malice established where defendant intentionally pointed a revolver at victim and fired).

## B.

Kuilan next argues that the trial court erred in not granting his post-sentence motion for a new trial in which he argued that the trial court's verdict was against the weight of the evidence. In a one-paragraph argument, Kuilan parrots the same arguments that he raised in his sufficiency claim, arguing

that the security footage was too inconclusive to establish that he was the shooter and, even if he was, that he acted with malice because he fired from a far distance.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa. Super. 2022) (cleaned up). Accordingly, we must determine whether the trial court, in denying Kuilan's post-sentence motion, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

After review, we find no abuse of discretion in the trial court's denial of Kuilan's challenge to the weight of the evidence. As the trial court succinctly explained in its Pa.R.A.P. 1925(a) opinion, the evidence of Kuilan's guilt in committing third-degree murder was overwhelming, as the evidence

> established that Kuilan fired a gun at the decedent eight times, hitting him in the chest, and resulting in his death. The decedent was minding his own business when Kuilan approached and

- 10 -

opened fire without warning. This Court, as fact-finder, determined that Kuilan was the shooter based on the surveillance video, the GPS tracker, the Defendant's statement, and the gun found in the Defendant's vehicle. The Glock 19 found in his vehicle matched the FCCs found at the scene. Kuilan's DNA was also found on the Buick LaCrosse that the shooter drove both before and after the shooting.

TCO at 8 (cleaned up).

We have little to add to this. As discussed in the sufficiency claim, the Commonwealth's case in identifying Kuilan as the shooter was based not only on testimony identifying him as the shooter seen in the surveillance footage, but also on the substantial evidence tying him to the Buick LaCrosse and Glock 19 that were used in the murder, including Kuilan's own admissions the car and gun belonged to him. Again, the trial court, sitting as the factfinder, was free to credit this evidence and, along with viewing the surveillance footage and crediting Corporal Johnson's identification, conclude that Kuilan was the shooter and that he killed the decedent with malice. Accordingly, we find no merit in Kuilan's weight-of-the-evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2023